# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

KASHYAP P. PATEL,

   *Plaintiff*

v.

CESARE FRANK FIGLIUZZI, JR.,

   *Defendant*

CIVIL ACTION NO. 4:25-cv-02548

## <u>DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

NATURE AND STAGE OF THE PROCEEDING ........................................... 1

STATEMENT OF THE ISSUES ...................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................ 1

FACTUAL BACKGROUND ........................................................................... 5

      A.    Patel's nomination to become FBI Director was the subject of intense public debate and criticism, including by former agent Figliuzzi. .................................................................................... 5

      B.    As Director, Patel developed a reputation for high-visibility socializing. ................................................................................ 6

      C.    Appearing on MSNBC's *Morning Joe*, Figliuzzi made a sarcastic remark about Director Patel's socializing. ....................... 9

      D.    Director Patel sued Figliuzzi for defamation based on the "nightclub" remark. ......................................................... 11

LEGAL STANDARDS ................................................................................... 11

ARGUMENT .................................................................................................. 12

      A.    The First Amendment protects Figliuzzi's sarcastic, hyperbolic "nightclub" remark. ...................................................... 12

      B.    Patel's conclusory allegations and accusations of partisan animus are insufficient to satisfy his pleading burden on the element of actual malice. ............................................................. 17

      C.    Figliuzzi is entitled to recover his court costs and attorney's fees. .......................................................................................... 22

CONCLUSION ............................................................................................... 25

CERTIFICATE OF CONFERENCE ............................................................. 27

CERTIFICATE OF SERVICE ...................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
  774 F.3d 803 (2d Cir. 2014).................................................................. 4, 24

*Amin v. NBCUniversal Media, LLC*,
  2022 WL 16964770 (S.D. Ga. Nov. 16, 2022) .......................................... 20

*Arpaio v. Zucker*,
  414 F. Supp. 3d 84 (D.D.C. 2019) ............................................................ 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 11

*Benfield v. Magee*,
  945 F.3d 333 (5th Cir. 2019) .................................................................... 11

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013),
  *aff'd*, 807 F.3d 541 (2d Cir. 2015) ...................................................... 11, 18

*Bobulinski v. Tarlov*,
  758 F. Supp. 3d 166 (S.D.N.Y. 2024)....................................................... 25

*Danawala v. Hou. Lighting & Power Co.*,
  14 F.3d 251 (5th Cir. 1993) ...................................................................... 21

*Davis v. Jones*,
  2024 WL 2707952 (E.D. Tex. Mar. 13, 2024) .......................................... 20

*Diamond Ranch Acad., Inc. v. Filer*,
  117 F. Supp. 3d 1313 (D. Utah 2015)........................................................ 23

*Donald J. Trump for President, Inc. v. WP Co. LLC*,
  2023 WL 1765193 (D.D.C. Feb. 3, 2023) ................................................. 20

*Favre v. Sharpe*,
  117 F.4th 342 (5th Cir. 2024) ................................................................... 12

*Favre v. Sharpe*,
    2023 WL 7132949 (S.D. Miss. Oct. 30, 2023),
    *aff'd on other grounds*, 117 F.4th 342 (5th Cir. 2024) ................................. 14

*Freedom Newspapers of Tex. v. Cantu*,
    168 S.W.3d 847 (Tex. 2005)........................................................................... 21

*Frith v. Guardian Life Ins. Co.*,
    9 F. Supp. 2d 734 (S.D. Tex. 1998) ............................................................... 11

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)........................................................................................ 17

*Greenbelt Co-op. Publ'g Ass'n v. Bresler*,
    398 U.S. 6 (1970) ........................................................................................... 13

*Heilbut v. Cassava Scis., Inc.*,
    778 F. Supp. 3d 551 (S.D.N.Y. 2025)............................................................ 25

*Herbert v. Lando*,
    781 F.2d 298 (2d Cir. 1986)............................................................................ 21

*Herring Networks, Inc. v. Maddow*,
    445 F. Supp. 3d 1042, 1049-50 (S.D. Cal. 2020),
    *aff'd*, 8 F.4th 1148 (9th Cir. 2021) ................................................................. 15

*Hustler Mag., Inc. v. Falwell*,
    485 U.S. 46 (1988).......................................................................................... 13

*Immanuel v. Cable News Network, Inc.*,
    618 F. Supp. 3d 557 (S.D. Tex. 2022) ................................................. 4, 18, 20

*Jelec USA, Inc. v. Safety Controls, Inc.*,
    498 F. Supp. 2d 945 (S.D. Tex. 2007) ........................................................... 22

*Kesner v. Dow Jones & Co., Inc.*,
    515 F. Supp. 3d 149 (S.D.N.Y. 2021)............................................................ 23

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) .......................................................................... 24

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020).............................................................................. 24

*Lavine v. Glavin*,
    194 N.Y.S.3d 403 (N.Y. App. Div. 4th Dep't 2023)..................................... 13

*Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ........................................................................... 13

*Levine v. CMP Pubs., Inc.*,
    738 F.2d 660 (5th Cir. 1984) ........................................................... 23

*Lilith Fund for Reprod. Eq. v. Dickson*,
    662 S.W.3d 355 (Tex. 2023) ............................................................ 14

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020) ............................................................. 21

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) ............................................. 15

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ..................................................... 12, 18

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990) ............................................................................. 13

*Mitchell v. Lone Star Ammunition, Inc.*,
    913 F.2d 242 (5th Cir. 1990) ........................................................... 22

*Moalem v. Int'l SPA Ass'n.*,
    2020 WL 5805495 (D. Nev. Sept. 29, 2020) ................................... 13

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..................................................................... 12, 17

*New Times, Inc. v. Isaacks*,
    146 S.W.3d 144 (Tex. 2004) .................................................... *passim*

*Newton v. Nat'l Broad. Co.*,
    930 F.2d 662 (9th Cir. 1990) ........................................................... 18

*Palin v. N.Y. Times Co.*,
    482 F. Supp. 3d 208 (S.D.N.Y. 2020) ........................................... 4, 18

*Patel v. Cable News Network, Inc.*,
    910 S.E.2d 532 (Va. App. 2025) ........................................ 4, 19, 20, 21

*Paucek v. Shaulis*,
    349 F.R.D. 498 (D.N.J. 2025) ..................................................... 23, 25

*Pegasus v. Reno Newspapers, Inc.*,
   57 P.3d 82 (Nev. 2002) .............................................................. 13

*Prince v. Intercept*,
   2023 WL 4492413 (S.D.N.Y. July 12, 2023) ............................. 20

*Pring v. Penthouse Int'l, Ltd.*,
   695 F.2d 438 (10th Cir. 1982) .............................................. 14, 16

*Revell v. Hoffman*,
   309 F.3d 1228 (10th Cir. 2002) .................................................. 17

*S.F. Bay Guardian, Inc. v. Superior Ct.*,
   21 Cal.Rptr.2d 464 (Cal. Ct. App. 1993) .................................. 14

*Saenz v. Playboy Enters., Inc.*,
   841 F.2d 1309 (7th Cir. 1988) .................................................. 18

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ................................................. 18, 19

*Segall v. Sanders*,
   11 N.Y.S.3d 235 (N.Y. App. Div. 2d Dep't 2015) ..................... 13

*Tah v. Glob. Witness Publ'g, Inc.*,
   991 F.3d 231 (D.C. Cir. 2021) .................................................... 4

*Toyota Motor Co. v. Cook*,
   581 S.W.3d 278 (Tex. App.—Beaumont 2019, no pet.) ............. 23

*Tucker v. Fischbein*,
   237 F.3d 275 (3d Cir. 2001).................................................... 21

*Walker v. Beaumont Indep. Sch. Dist.*,
   938 F.3d 724 (5th Cir. 2019) ............................................... 12, 18

*Walter v. Herbert*,
   2024 WL 2159516 (M.D. Pa. May 14, 2024) ............................. 19

*Zerangue v. TSP Newspapers, Inc.*,
   814 F.2d 1066 (5th Cir. 1987) .................................................. 17

**Statutes**

N.Y. Civ. Rights Law § 70-a(1) .................................................... 23

NEV. REV. STAT. 41.670 ...................................................................................... 23

**Rules**

FED. R. CIV. P. 12(b)(6) ............................................................................ *passim*

**Constitutional Provisions**

U.S. CONST., amend. I ............................................................................ *passim*

**Other**

Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York
   Anti-SLAPP Scheme in Federal Court*, 2 J. FREE SPEECH L. 573 (2023) ................... 25

## NATURE AND STAGE OF THE PROCEEDING

This is a defamation case filed by Plaintiff Kashyap P. Patel ("Director Patel"), the Director of the FBI, against Cesare Frank Figliuzzi, Jr. ("Figliuzzi") based on a brief remark made by Figliuzzi on a live cable news program on MSNBC on May 2, 2025.[1] Figliuzzi moves to dismiss Director Patel's claim (Dkt. 1) under FED. R. CIV. P. 12(b)(6).

## STATEMENT OF THE ISSUES

1.      Should the Court dismiss Director Patel's defamation claim because the First Amendment protects Figliuzzi's remark, sarcastically referencing media reports about Patel's high-visibility social activities, as rhetorical hyperbole and commentary?

2.      In the alternative, should the Court dismiss Director Patel's defamation claim because his conclusory allegations fail to allege the element of actual malice with the requisite plausibility?

3.      Is Figliuzzi entitled to recover his costs and attorney's fees?

## SUMMARY OF THE ARGUMENT

This is a performative defamation suit filed by a public official—the self-described "top federal law enforcement official in the nation"—after media reports on his jet-setting social life raised questions about whether he was at work enough. In the weeks after his confirmation as FBI Director in January 2025, media reports showed Patel in Las Vegas with Mel Gibson for a UFC fight, in Miami with Joe Rogan for another UFC fight, and in Washington and New York with Wayne Gretzky for hockey games. Patel was reported to be active on the Washington, D.C. party scene, working remotely from Las Vegas, and

---

[1] A video of Figliuzzi's comment is attached as Ex. A to the Declaration of Maggie Burreson ("Burreson Decl.").

visiting his 26-year-old country music singer girlfriend in Nashville. Media reports also noted that, like former FBI Director J. Edgar Hoover, Patel frequented social clubs, having recently become a member of an exclusive Las Vegas evening lounge. At the same time, Patel was reported to be holding fewer meetings with FBI agents and arranging for his personal trainer to access the Hoover Building.

By late April, as media outlets published assessments of the Trump Administration's first 100 days, Director Patel's high-visibility socializing figured prominently in articles about the FBI. Citing his hobnobbing with celebrities at sporting events, his bachelor lifestyle in Las Vegas, and his fondness for fancy social clubs, *The New York Times* headlined its article: "A Different Kind of F.B.I. Chief: Jet-Setting Patel Loves the Limelight."[2] The article also noted that some of Patel's day-to-day running of the FBI had been less visible, reporting that it "flown under the radar[.]"

On May 2, Figliuzzi, an MSNBC commentator, appeared on *Morning Joe* to offer his takes on a variety of issues. The program's host, Jonathan Lemire, began by observing that Director Patel had taken a "*surprisingly backseat role*" in running the FBI and had been "*a little less visible*" than some observers initially expected. Responding to this observation about Patel's visibility, Figliuzzi quipped:

> Yeah, well, reportedly, he's been visible at nightclubs far more than he has been on the seventh floor of the Hoover building.[3]

---

[2] Adam Goldman and Aric Toler, *A Different Kind of F.B.I. Chief: Jet-Setting Patel Loves the Limelight*, THE NEW YORK TIMES (Apr. 20, 2025), https://www.nytimes.com/2025/04/20/us/politics/kash-patel-spotlight-fbi-director.html (Burreson Decl. Ex. 2).
[3] Burreson Decl. Ex. 16.

Patel sued. Calling Figliuzzi's remark a "specific lie," Patel alleges that he "has not spent a single minute inside of a nightclub" and "has not even stepped foot in a nightclub" since becoming FBI Director. (Dkt. 1 ¶¶ 10, 23). According to Patel, "[he] has fully dedicated his energies toward protecting the American people, enforcing the law, and otherwise fulfilling the tremendous duties of FBI Director." (Dkt. 19 at 1).

Filing suit might be a savvy public relations move for Director Patel—an opportunity to generate news articles and online posts repeating his assurances that he is working very hard. Director Patel might also see the case as an opportunity to drag a longstanding, vocal critic through expensive and burdensome litigation. Or he might hope to exploit the civil discovery process to root out critics inside the Bureau.[4]

But Director Patel's suit has no legal merit. His defamation claim is premised on an unreasonably literal interpretation of Figliuzzi's remark, which is not supported by its text or context. No reasonable viewer would have understood Figliuzzi to be asserting as literal fact that Director Patel is spending more—indeed, *"far more"*—time in nightclubs than in the office. Even Patel concedes this proposition is "inherently improbable" and obviously untrue. (Dkt. 19 at 2). Of course, that's because the remark was not meant literally, but as a sarcastic quip about Patel's well-publicized socializing. As such, Figliuzzi's remark fits into the long tradition of colorful, rhetorical commentary that is fully protected by the First Amendment. *See, e.g.*, *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 156-58 (Tex. 2004). This Court should join the long line of courts rejecting public officials' attempts to impose

---

[4] Adam Goldman, *The F.B.I. Is Using Polygraphs to Test Officials' Loyalty*, THE NEW YORK TIMES (Jul. 10, 2025), https://www.nytimes.com/2025/07/10/us/politics/fbi-polygraph-kash-patel.html (Burreson Decl. Ex. 2).

defamation liability on their critics by alleging unreasonably literal meanings of statements that are really nothing more than sharp, hyperbolic rhetoric. *Id.*

Even if Director Patel's literal interpretation of Figliuzzi's remark were reasonable, his claim must be dismissed because he cannot satisfy his actual malice pleading burden. The actual malice standard is "famously 'daunting'" in any case, even at the pleading stage. *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021). Here, it is especially so. Director Patel must plead facts that plausibly show Figliuzzi intended his "nightclub" remark literally or at least was aware that the reasonable viewer would understand it that way. *Isaacks*, 146 S.W.3d at 163 n.8; *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 217-18 (S.D.N.Y. 2020). Patel's allegations come nowhere close to meeting this standard. He relies on the same labels, buzzwords, and conclusory assertions that have consistently been held insufficient, including in decisions by this Court and as to defamation claims brought by Patel himself. *Immanuel v. Cable News Network, Inc.*, 618 F. Supp. 3d 557, 566-67 (S.D. Tex. 2022) (Rosenthal, J.); *Patel v. Cable News Network, Inc.*, 910 S.E.2d 532, 419-21 (Va. App. 2025).

In addition to dismissing Patel's defamation claim, the Court should award Figliuzzi his costs and attorney's fees relating to this baseless suit. Patel is a Nevada resident, and Figliuzzi's remark was made in MSNBC's New York City studios. Both Nevada and New York provide for fee-shifting as a matter of state substantive law, and these provisions apply in federal court. *See, e.g.*, *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (application of Nevada's anti-SLAPP fee-shifting provisions in federal court is "unproblematic" under *Erie*).

## FACTUAL BACKGROUND

### A.    Patel's nomination to become FBI Director was the subject of intense public debate and criticism, including by former agent Figliuzzi.

At the time of his controversial nomination to become FBI Director, Kash Patel had developed a public reputation as a loyalist of President Donald Trump and a critic of the FBI.[5] The press coverage of the nomination noted that Patel's year-old book, *Government Gangsters: The Deep State, the Truth, and the Battle for Our Democracy*, featured a list of "corrupt actors" that included several former high-level FBI officials.[6] Even Patel's colleagues in the first Trump Administration sounded warnings about him, with one opining that Patel's "professional experience does not meet the leadership, management, or character standards required" to lead the Bureau.[7]

Frank Figliuzzi, a former assistant director for counterintelligence at the FBI, was especially vocal in his criticism. (Dkt. ¶ 8). Having retired from the FBI, Figliuzzi has worked since 2016 as an MSNBC opinion columnist and commentator. In January 2025, Figliuzzi expressed his concern about Patel's nomination, writing that Patel's past statements and conduct were "disqualifying" and calling him the "one of the most ill-suited Cabinet nominees—not just now, but of all time." (Dkt. 1 ¶ 16).[8] Figliuzzi predicted that, if confirmed, Patel would "have a tough time running the place."[9]

---

[5] Jack Forrest, *Who is Kash Patel, Trump's pick for FBI director?*, CNN (Dec. 2, 2024), https://www.cnn.com/2024/12/02/politics/who-is-kash-patel-trump-fbi-director/index.html (Burreson Decl. Ex. 3).

[6] Annie Grayer and Marshall Cohen, *People on Kash Patel's So-Called 'Enemies List' Taking Drastic Steps for Protection Before His Potential FBI Takeover*, CNN (Jan. 30, 2025), https://www.cnn.com/2025/01/30/politics/kash-patel-critics-fbi-takeover/index.html. (Burreson Decl. Ex. 4).

[7] *Id.*

[8] Frank Figliuzzi, *I once briefed the White House on Cabinet nominees. What I'd say about Kash Patel,* MSNBC (Jan. 30, 2025) https://www.msnbc.com/opinion/msnbc-opinion/kash-patel-trump-fbi-director-confirmation-hearing-rcna189439 (Burreson Decl. Ex. 5).

[9] *Id.*

This was not Figliuzzi's first criticism of Patel, and it would not be his last. When

Patel's nomination was announced in late 2024, Figliuzzi wrote:

> It isn't just that Patel is wholly unqualified to lead the pre-eminent law enforcement and intelligence agency in the nation and perhaps the world.
>
> ***
>
> Patel's particular problem goes far beyond competence: His record shows no devotion to the Constitution, but blind allegiance to Trump. Patel helped spread the fabricated conspiracy theory that the 2020 election was rigged against Trump. He has promoted the conspiracy of a "deep state" within government institutions whose aim is to topple Trump.
>
> ***
>
> In an interview last year with Trump adviser Steve Bannon, Patel promised to pursue judges, lawyers and even journalists he perceived as having wrongly investigated Trump and influenced the 2020 election. "We will go out and find the conspirators," he told Bannon, "not just in government but in the media[.]"

(Dkt. 1 ¶ 17).[10] Months later, Figliuzzi expressed his concern that, under Patel, the FBI

might repeat the same abuses as when J. Edgar Hoover was Director. (*Id.* ¶ 18).[11]

## B.  As Director, Patel developed a reputation for high-visibility socializing.

Even before his confirmation, Patel's Las Vegas residence, members-only evening

lounge, and flashy social life featured prominently in press coverage of him. In January

2025, *The New York Times* reported that Patel "was recently accepted as a member of the

Poodle Room, a rooftop club at the Fontainebleau Hotel" inspired by "a lounge of the same

---

[10] Frank Figliuzzi, *I'm a former FBI agent. Kash Patel's problems go beyond his incompetence.*, MSNBC (Dec. 2, 2024), https://www.msnbc.com/opinion/msnbc-opinion/trump-fbi-director-kash-patel-incompetent-rcna182419 (Burreson Decl. Ex. 6).
[11] The complaint purports to quote Figliuzzi, but the quoted language is from an article by an unrelated publisher.

name in Florida, frequented by Frank Sinatra and the Rat Pack."[12] Open from the early evening to the early morning hours, the Poodle Room describes itself as a "private members club high above the Las Vegas Strip," promising that "[b]eyond the velvet rope lies more than just a view."[13] Other publications, including *The Wall Street Journal* and *Lawfare*, also reported on Patel's Poodle Room membership.[14]

Director Patel's social life continued to make headlines after his confirmation, as did reporting that he was less visible in the office than his predecessors had been. In February 2025, *The Wall Street Journal* reported that Patel had "told officials he planned to spend a lot of time in Las Vegas, where he was living[.]"[15] It reported that Patel had broken with FBI tradition by participating in the Washington party scene.[16] And it reported that Patel had told his FBI colleagues that he would be reducing the number of meetings with them.[17] It also reported that Patel had "asked for his personal trainer to be cleared to enter the [Hoover Building] for his workouts."[18]

In March 2025, Patel was photographed at a UFC fight with Mel Gibson:

---

[12] Glenn Thrush and Adam Goldman, *Senate Questionnaire Sheds Light on F.B.I. Pick's Early Years*, THE NEW YORK TIMES (Jan. 21, 2025), https://www.nytimes.com/2025/01/21/us/politics/trump-fbi-kash-patel-dei.html (Burreson Decl. Ex. 7).

[13] https://www.fontainebleaulasvegas.com/poodle-room/.

[14] Sadie Gurman and James Fannelli, *FBI Overhaul Off to a Rocky Start as Kash Patel Prepares to Defend His Vision*, THE WALL STREET JOURNAL (Jan. 29, 2025), https://www.wsj.com/politics/policy/fbi-overhaul-off-to-a-rocky-start-as-kash-patel-prepares-to-defend-his-vision-1085c6f8?gaa_at=eafs&gaa_n=ASWzDAhfFuNWgj0GlQM54JTwxHnx1jljAIjdRFrqH5OY3fkDcVo0gIe_E7015SgfXSU%3D&gaa_ts=68a76d06&gaa_sig=PwnvBVGUe229ORIKSSIBQ-ZKMJdvQA5piEWt0iwVez3W05fBCgh-9R5VgmQ2XXoIg2cVLJMwE4M3Bcd9JXuFtQ%3D%3D (Burreson Decl. Ex. 8); Anna Bower and Benjamin Wittes, *The Patel Dossier*, LAWFARE (Jan. 30, 2025), https://www.lawfaremedia.org/article/the-patel-dossier (Burreson Decl. Ex. 9).

[15] Sadie Gurman and Aruna Viswanatha, *Inside Kash Patel's Whirlwind Start at the FBI*, THE WALL STREET JOURNAL (Feb. 27, 2025), https://www.wsj.com/politics/policy/kash-patel-fbi-director-start-actions-c3d5d57f (Burreson Decl. Ex. 10).

[16] *Id.*

[17] *Id.*

[18] *Id.*

---



Donald Trump's FBI director Kash Patel enjoyed an unlikely linkup with Mel Gibson at UFC 313

The *Daily Mail* reported that the photo, taken in Las Vegas, "sent social media into a frenzy."[19] A few weeks later, Director Patel attended a UFC fight in Miami with Joe Rogan and President Trump.[20] CBS,[21] CNN,[22] and other media outlets covered the visit. The same month, Patel was at two NHL games with Wayne Gretzky:



FBI director is Kash Patel, left, talking with former NHL player Wayne Gretzky, right, during the first period of an NHL hockey game between the Washington Capitals and Chicago Blackhawks, Friday, April 4, 2025, in Washington.  (AP Photo/Mark Schiefelbein)

The visits were reported by media outlets ranging from *USA Today*[23] to Fox News.[24]

---

[19] Oliver Salt, *UFC Fans Go Wild as Donald Trump's FBI Boss Kash Patel and Mel Gibson Fist Bump in Las Vegas*, DAILY MAIL (Mar. 9, 2025), https://www.dailymail.co.uk/sport/mma/article-14479089/ufc-donald-trump-fbi-kash-patel-mel-gibson.html (Burreson Decl. Ex. 11).

[20] Goldman and Toler, *supra* n.2.

[21] *Trump sits cageside with several cabinet members at Miami UFC event in latest appearance at sports event*, CBS NEWS (Apr. 13, 2025), https://www.cbsnews.com/miami/news/trump-receives-a-standing-ovation-as-he-enters-a-ufc-event-in-miami-2/ (Burreson Decl. Ex. 12).

[22] Betsey Klein, *Trump trades the Oval Office for The Octagon with UFC appearance*, CNN (Apr. 12, 2025), https://www.cnn.com/2025/04/12/politics/trump-ufc-miami-fight (Burreson Decl. Ex. 13).

[23] Charles Curtis, *Was that Kash Patel with Wayne Gretzky at Alex Ovechkin's record-tying performance?*, USA TODAY (Apr. 4, 2025), https://ftw.usatoday.com/story/sports/nhl/2025/04/04/kash-patel-wayne-gretzky-alex-ovechkin-record-captials-game/82907658007/ (Burreson Decl. Ex. 14).

[24] Paulina Dedaj, *FBI Director Kash Patel celebrates Alex Ovechkin's historic night alongside Wayne Gretzky: 'Huge props'*, FOX NEWS (Apr. 5, 2025), https://www.foxnews.com/sports/fbi-director-kash-patel-celebrates-alex-ovechkins-historic-night-alongside-wayne-gretzky-huge-props (Burreson Decl. Ex. 15).

By late April, Patel's social life had become the focus of even more in-depth media reporting. On April 20, *The New York Times* published "A Different Kind of F.B.I. Chief: Jet-Setting Patel Loves the Limelight."[25] The article began by noting Patel's attendance at UFC fights and NHL games, and it also noted his Poodle Room membership:

> A bachelor who lives in Las Vegas, Mr. Patel belongs to the Poodle Room, a lavish members-only club at the Fontainebleau resort near his home. [J. Edgar] Hoover also was fond of clubs catering to a wealthy clientele ….
>
> Mr. Patel is enjoying bachelorhood, dating Alexis Wilkins, 26, a country music singer who lives in Nashville. Despite the challenges of being director, Mr. Patel appears to be making time for her.

The article cited flight logs that appeared to show Director Patel had been using official government aircraft to attend these various social events across the country.[26]

### C. Appearing on MSNBC's *Morning Joe*, Figliuzzi made a sarcastic remark about Director Patel's socializing.

On May 2, 2025, shortly after *The New York Times*'s article was published—and at the end of the Trump Administration's first 100 days—Figliuzzi joined a roundtable discussion on MSNBC's *Morning Joe*. The program's co-host asked:

> *So, Frank, let's turn to FBI Director Kash Patel, who has sort of taken a surprisingly backseat role—at least to this point, in the first 102 or 103 days, wherever we are right now. What do you make of that, that he's just been **a little less visible** than I think a lot of people and Trump observers expected him to be?*

Responding to this observation about Patel's low visibility at work, Figliuzzi made a sarcastic reference to his high-visibility social pursuits:

---

[25] Goldman and Toler, *supra* n.2.
[26] *Id.*

> *Yeah, well, reportedly, he's been visible at nightclubs far more than he has been on the seventh floor of the Hoover building.*

Figliuzzi then added:

> *And there are reports that daily briefings to him have been changed from every day to maybe twice weekly.*



Figliuzzi then followed up with more sarcasm:

> *So this is both a blessing and a curse, because if he's really trying to run things without any experience level, things could be bad. If he's not plugged in, things could be bad, but he's allowing agents to run things. So we don't know where this is going.*[27]

In the days that followed, the public narrative around Director Patel continued to focus on his social life. On May 10, *Saturday Night Live*'s "Weekend Update" jokingly observed that Patel "*is often seen attending sporting events with celebrities*":[28]



---

[27] Burreson Decl. Ex. 16.
[28] Burreson Decl. ¶ 19.

### D.    Director Patel sued Figliuzzi for defamation based on the "nightclub" remark.

On June 2, 2025, Director Patel sued Figliuzzi. (Dkt. 1). Asserting a single claim for defamation, Patel's complaint is based solely on Figliuzzi's "nightclub" remark, which Patel calls "entirely false." (*Id.* ¶ 23). Patel alleges that he "has not even stepped foot in a nightclub since becoming Director of the FBI." (*Id.*).

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding the motion, the Court must "accept all well-pleaded facts as true," but must not credit "legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336-37 (5th Cir. 2019) (cleaned up). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998) (Gilmore, J.) (citation omitted).

Rigorous application of these standards is essential where, as here, the suit targets protected speech. "[I]n defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015). "[T]he

plausibility pleading standard makes particular sense when examining public figure defamation suits. In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016).

In deciding a Rule 12(b)(6) motion to dismiss, the Court considers the "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). In a defamation case, this includes the challenged statement and media reports showing the context in which the statement was made. *Id.*; *Favre v. Sharpe*, 117 F.4th 342, 344-47 (5th Cir. 2024) (considering press coverage of controversy surrounding plaintiff in deciding defendant's motion to dismiss defamation claim). Such documents assist "the court in making the elementary determination of whether a claim has been stated." *Walker*, 938 F.3d at 735.

## ARGUMENT

### A.    The First Amendment protects Figliuzzi's sarcastic, hyperbolic "nightclub" remark.

The Supreme Court has long recognized that the First Amendment reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Consistent with this commitment, rhetorical hyperbole on matters of public concern receives full First Amendment protection from

defamation liability. *Isaacks*, 146 S.W.3d at 155; *see also Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002) ("[A] statement is not defamatory if it is an exaggeration . . . that could be interpreted by a reasonable person as 'mere rhetorical hyperbole.'"); *Segall v. Sanders*, 11 N.Y.S.3d 235, 236 (N.Y. App. Div. 2d Dep't 2015) ("Mere 'rhetorical hyperbole' is not actionable." (citation omitted)); *see also Letter Carriers v. Austin*, 418 U.S. 264, 282-83 (1974) (nonliteral, hyperbolic use of terms "scab" and "traitor" not actionable defamation); *Greenbelt Co-op. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) (same, as to term "blackmail"). This protection ensures "that public debate will not suffer for lack of 'imaginative expression' … which has traditionally added much to the discourse of our Nation." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20-21 (1990) (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 53-55 (1988)).

Figliuzzi's sarcastic, hyperbolic "nightclub" remark fits squarely into this category of constitutionally protected speech. Seeking to overcome this protection, Director Patel proffers an unreasonably literal interpretation of the remark, characterizing it as a "specific lie." (Dkt. 1 ¶ 25). But the Court is not bound by the literal meaning that Patel alleges. In a defamation case, the meaning of a challenged statement is determined in the first instance by the court as a matter of law. *Isaacks*, 146 S.W.3d at 155; *Moalem v. Int'l SPA Ass'n.*, 2020 WL 5805495, at *3 (D. Nev. Sept. 29, 2020) ("The determination of whether a statement is capable of a defamatory construction is a question of law."); *Lavine v. Glavin*, 194 N.Y.S.3d 403, 404 (N.Y. App. Div. 4th Dep't 2023) (same).

To decide whether a challenged statement is capable of defamatory meaning—here, "whether the publication could be reasonably understood as describing actual facts"—the

court assumes the role of the "reasonable reader" (here, the reasonable viewer). *Isaacks*, 146 S.W.3d at 156-57 (citing *Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438, 442 (10th Cir. 1982)). As *Isaacks* teaches, the reasonable reader is not to be "underestimated." *Id.* The reasonable reader does not represent "the lowest common denominator, but reasonable intelligence and learning[,]" and they "can tell the difference between satire and sincerity." *Id*. The inquiry "is objective, not subjective. Thus, the question is not whether some actual readers were misled, as they inevitably will be, but whether the hypothetical reasonable reader could be." *Id.* (citing *S.F. Bay Guardian, Inc. v. Superior Ct.*, 21 Cal.Rptr.2d 464, 467 (Cal. Ct. App. 1993) (evidence from actual readers regarding meaning of publication "does not raise a question of fact as to the view of the average reader")).

Importantly, context matters for the reasonable reader—they are "aware of relevant contemporary events" and "equipped with the national, historical, and temporal context" necessary to determine the meaning of a challenged statement. *Lilith Fund for Reprod. Eq. v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023). "Highly charged language must be viewed in its 'broad context' to determine whether it would reasonably be construed in a literal sense." *Favre v. Sharpe*, 2023 WL 7132949, at *6 (S.D. Miss. Oct. 30, 2023), *aff'd on other grounds*, 117 F.4th 342 (5th Cir. 2024). The medium in which the statement was made matters, too. *Isaacks*, 146 S.W.3d at 159 ("[T]he reasonable reader must consider the type of publication in which the offending material appears."). And the reasonable reader pays particularly close attention to textual clues in the statement itself. *Id.* at 155-61. Here, all these guideposts tell the reasonable reader that Figliuzzi's "nightclub" remark was meant sarcastically and hyperbolically—not literally.

As to context, Figliuzzi's comment on *Morning Joe* followed the publication of *The New York Times*'s article headlined, "A Different Kind of F.B.I. Chief: Jet-Setting Patel Loves the Limelight," which cited Patel's attendance at UFC fights and NHL games and stated: "A bachelor who lives in Las Vegas, Mr. Patel belongs to the Poodle Room, a lavish members-only club at the Fontainebleau resort near his home."[29] The article also followed months of other reports on Patel's socializing with celebrities, as well as reports that he was cutting back on meetings with FBI agents and working remotely from Las Vegas.[30]

Against this backdrop, Figliuzzi was asked to comment on the program host's observation that Director Patel's work had been "*a little less visible*" than some had predicted.[31] Figliuzzi responded with humor, joking that "*Yeah, well, reportedly he has been visible at nightclubs far more than he has been on the seventh floor of the Hoover Building.*" Courts recognize that such hyperbolic sarcasm is common on cable news. *See, e.g.*, *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 182-84 (S.D.N.Y. 2020) (audiences of "commentary talk shows" expect a degree of "pitched commentary" and "increasingly barbed language to address issues in the news"); *Herring Networks, Inc. v. Maddow*, 445 F. Supp. 3d 1042, 1049-50 (S.D. Cal. 2020) (cable news "medium . . . makes it more likely that a reasonable viewer would not conclude that the contested statement implies an assertion of objective fact" where the show included "opinions" along with the "facts and the goings-on of the world"), *aff'd*, 8 F.4th 1148 (9th Cir. 2021).

---

[29] Goldman and Toler, *supra* n.2.
[30] *See supra* n. 12–24.
[31] Burreson Decl. Ex. 16.

The text of Figliuzzi's remark also belies the literal meaning that Director Patel proposes. Patel alleges that Figliuzzi's comment is "entirely false" because he "has not even stepped foot in a nightclub since becoming Director of the FBI." (Dkt. 1 ¶ 23). But Figliuzzi did not state that Patel had "stepped foot in a nightclub." Such a statement might be reasonably capable of literal interpretation, but it would not be actionable—especially as to Patel, who is known to be a member of an exclusive Las Vegas evening lounge. Similarly, Figliuzzi's remark was not that Patel "has been absent from his job." (Dkt. 1 ¶ 24). That, too, might be understood literally, but it's not what Figliuzzi said—and besides, other media had already reported that Patel was in the office less and was holding fewer meetings than his predecessors. In any event, Figliuzzi expressly acknowledged that "we don't know" the extent to which Patel is "plugged in" at the FBI.[32]

Rather, Figliuzzi's actual words confirm he intended a sarcastic, hyperbolic meaning. Figliuzzi began with the colloquialism, "*yeah, well*," before making the over-the-top claim that "*reportedly*" Patel "*has been visible at nightclubs far more than*" at the office.[33] Patel contends that, taken literally, this assertion is "easily falsifiable and inherently improbable." (Dkt. 19 at 2). He's right. The reasonable viewer would not believe that Director Patel is actually spending "*far more*" time each day in nightclubs than at work. The obvious impossibility of the proposition is yet another unmistakable sign that the remark was sarcastic. *Pring*, 695 F.2d at 443 ("The incidents charged were impossible.").

---

[32] Burreson Decl. Ex. 16.
[33] *Id.*

By contrast, Director Patel's proposed literal meaning finds no support in either text or context. Patel alleges that Figliuzzi's use of the term "*reportedly*" should be construed as insinuating that he was "privy to insider information." (Dkt. 1 ¶ 25). But Figliuzzi never said his "nightclub" remark was based on original reporting. Rather, Figliuzzi was asked to comment on an observation by the program's host about Director Patel's low-visibility work profile, and Figliuzzi responded by referencing his high-visibility socializing. Director Patel may not appreciate this sarcasm, and he may dislike the "not at work enough" media narrative, but he has no viable defamation claim here.

### B.    Patel's conclusory allegations and accusations of partisan animus are insufficient to satisfy his pleading burden on the element of actual malice.

Even if Director Patel could show that the reasonable viewer would have understood Figliuzzi's "nightclub" remark literally, he must also plausibly allege that Figliuzzi spoke with actual malice. Because Patel is a public official, he "must shoulder the heavy burden of showing that the defendant[] acted with 'actual malice'—a burden that private figures need not meet." *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1069 (5th Cir. 1987) (citing *N.Y. Times*, 376 U.S. at 280); *Revell v. Hoffman*, 309 F.3d 1228, 1232-33 (10th Cir. 2002) (associate deputy director of FBI is public official). The Supreme Court has long defined "actual malice" as "knowledge that [the publication] was false or . . . reckless disregard of whether it was false or not." *N.Y. Times*, 376 U.S. at 280. And it "has further defined 'reckless disregard' as a 'high degree of awareness of probable falsity.'" *Zerangue*, 814 F.2d at 1070 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974)).

Where, as here, there is a threshold question regarding a statement's meaning, the First Amendment requires the plaintiff to show with convincing clarity that the defendant actually intended the alleged false meaning. *See, e.g.*, *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir. 1990) (defendants should not be liable "for what was not intended to be said" lest we "eviscerate[] the First Amendment protections established by *New York Times*"); *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988) ("[R]equiring a publisher to guarantee the truth of all the inferences a reader might reasonably draw from a publication would undermine the uninhibited, open discussion of matters of public concern."); *Palin*, 482 F. Supp. 3d at 217-18 (citing *Newton* and *Saenz* in adopting awareness rule); *cf. Isaacks,* 146 S.W.3d at 163 n.8 (in parody case, leaving undecided question of whether actual malice standard required showing of actual intent to convey alleged meaning, or mere knowledge that reasonable reader might draw such meaning).

Federal courts, including the Fifth Circuit and this Court, regularly dismiss defamation claims when plaintiffs fail to plead actual malice with the requisite plausibility. *See, e.g.*, *Walker*, 938 F.3d at 744-45 ("[W]e agree with the district court that the deficiency of [plaintiff's] 'actual malice' allegations provides an independent, standalone basis for dismissal of [plaintiff's] defamation claims."); *Immanuel*, 618 F. Supp. 3d at 566-67 ("[Plaintiff] has failed to plausibly allege the malice element necessary for her claim. Her defamation claim fails on this basis[.]"); *see also Michel*, 816 F.3d at 701-02 (Rule 12(b)(6) required dismissal because plaintiff failed to plead actual malice with plausibility); *Biro*, 807 F.3d at 544-46 (same); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (same). Indeed, an appellate court in Virginia recently affirmed the

dismissal of Director Patel's defamation claims against CNN based on his failure to plead actual malice. *Patel*, 910 S.E.2d at 419-21 ("[E]ven considering Patel's allegations in the aggregate, they fail to plead facts with sufficient definiteness to enable the conclusion that CNN published . . . with actual malice.").

Here, the complaint comes nowhere close to pleading actual malice with plausibility. Director Patel does not plead any *facts* that would support a finding that Figliuzzi intended to make a false statement of fact when he made his "nightclub" remark. Instead, Patel relies on the same types of conclusory and irrelevant allegations that courts have consistently held insufficient to survive dismissal:

*First*, Patel claims Figliuzzi's "nightclub" remark was a "fabrication" and a "lie" and that he "made up the story out of whole cloth." (Dkt. 1 at ¶¶ 13, 15, 25). But courts regularly reject such labels, buzzwords, and conclusory assertions as insufficient. *See Schatz*, 669 F.3d at 56 ("[Plaintiff's] complaint used actual-malice buzzwords, contending that the [defendant] had 'knowledge' that its statements were 'false' or had 'serious doubts' about their truth and a 'reckless disregard' for whether they were false. But these are merely legal conclusions, which must be backed by well-pled facts."); *Walter v. Herbert*, 2024 WL 2159516, at *10 (M.D. Pa. May 14, 2024) (rejecting "generalized allegations" that defendant "knew" or "had been made well aware of," falsehoods, "had absolutely no basis for" certain implications, "fabricated" statements, or "intentionally disregard[ed] facts"); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) (complaint "does not come close to adequately pleading facts of actual malice" when it asserts without factual elaboration that defendant knew statements were false). Patel's own similar allegations have been

dismissed on this basis. *Patel*, 910 S.E.2d at 419 (Patel's allegations that CNN "fabricated" and "manufactured" challenged statements "out of whole cloth" held insufficient).

***Second***, Director Patel alleges that Figliuzzi acted out of "clear animus toward Director Patel" and "his partisan desire to undermine the new leadership of the FBI under President Donald J. Trump." (Dkt. 1 ¶¶ 15, 25). It is true, as the complaint notes, that Figliuzzi has previously expressed opinions critical of Director Patel. (*Id.* ¶¶ 16-18).[34] But many, many cases recognize—as this Court has—that allegations of political partisanship, bias, and animus do not satisfy a plaintiff's actual malice pleading burden. *See Immanuel*, 618 F. Supp. 3d at 566-67 ("Political bias does not equate to evidence of actual malice[.]"); *Donald J. Trump for President, Inc. v. WP Co. LLC*, 2023 WL 1765193, *5 (D.D.C. Feb. 3, 2023) ("Assuming the Trump Campaign is correct that . . . [defendant] has previously published a commentary critical of Trump, '[i]t is settled that ill will toward the plaintiff or bad motives are not elements of actual malice and that such evidence is insufficient by itself to support a finding of actual malice.'" (citation omitted)); *Prince v. Intercept*, 2023 WL 4492413, at *7 (S.D.N.Y. July 12, 2023) ("A complaint that alleges a defamation defendant harbored ill will toward the plaintiff can 'provide[] no basis for plausibly inferring that [he] had any doubts about the truth' of the challenged statements.").

***Third***, Director Patel alleges that, on May 5, MSNBC characterized Figliuzzi's "nightclub" remark as a "misstatement" and stated that the network had not "verified" it.

---

[34] The prior statements on which Director Patel relies in his attempt to plead actual malice are attached to the Burreson Declaration as Exhibits 5-6, 17. *See Davis v. Jones*, 2024 WL 2707952, at *5 (E.D. Tex. Mar. 13, 2024) (considering documents outside complaint because plaintiff's actual malice element depended on them); *Amin v. NBCUniversal Media, LLC*, 2022 WL 16964770, at *4 (S.D. Ga. Nov. 16, 2022) (same).

(Dkt. 1 ¶ 14). But this cannot be evidence of what Figliuzzi intended to convey three days earlier. For one, MSNBC is not Figliuzzi. *See Patel*, 910 S.E.2d at 419-20 (holding that Director Patel's actual malice allegations failed to distinguish between the network generally and the individuals responsible for the challenged statements). Moreover, actual malice focuses on the defendant's state of mind at publication, not afterwards. *Danawala v. Hou. Lighting & Power Co.*, 14 F.3d 251, 255 (5th Cir. 1993); *Herbert v. Lando*, 781 F.2d 298, 309 (2d Cir. 1986) ("[I]naccuracies brought to the attention of the publisher after publication are not relevant to the publisher's state of mind before publication."). So, "[e]vidence concerning events after an article has been printed and distributed, has little, if any, bearing on that issue." *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005). And MSNBC's statement disclaims a literal interpretation of Figliuzzi's "nightclub" remark, but it says nothing of whether Figliuzzi meant the remark literally.

**Finally**, Director Patel states that Figliuzzi "obviously did not reach out to Director Patel for comment" before making his "nightclub" remark. (Dkt. 1 ¶ 25). But, again, this allegation fails to address whether Figliuzzi intended his remark literally. Not seeking comment is entirely consistent with Figliuzzi intending his off-the-cuff remark sarcastically, and not as original reporting. Regardless, courts have consistently rejected plaintiffs' attempts to plead actual malice by alleging that defendants did not adhere to journalistic practices like seeking advance comment. *See, e.g.*, *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359-60 (3d Cir. 2020) (allegation that defendant did not seek comment from plaintiff prior to publication insufficient to plead actual malice) (citing *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.) ("[E]ven an extreme

departure from professional standards, without more, will not support a finding of actual malice.")).

### C.    Figliuzzi is entitled to recover his court costs and attorney's fees.

Because the grounds set forth above are based on the First Amendment and federal pleading standards, the Court need not conduct a choice-of-law analysis in deciding whether Director Patel's claim should be dismissed under Rule 12(b)(6). But the separate question of whether Figliuzzi is entitled to recover his court costs and attorney's fees is governed by the fee-shifting provisions of state substantive law. Patel attempts to avoid liability for costs and attorney's fees by arguing that the Texas anti-SLAPP law's fee-shifting provisions are procedural and thus do not apply in federal court. (Dkt. 19 at 3). This logic goes astray, however, by assuming that Texas law governs the fee-shifting issue here. It doesn't. Either Nevada law (where Patel resides) or New York law (where Figliuzzi made the remark) applies, and both states' laws allow Figliuzzi to recover costs and attorney's fees here.

It is well established that, in diversity cases, the choice-of-law rules of the forum state apply. *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 249 (5th Cir. 1990). Texas applies the "most significant relationship test," the first step of which "is to decide whether the laws of the various jurisdictions conflict." *Jelec USA, Inc. v. Safety Controls, Inc.*, 498 F. Supp. 2d 945, 948 (S.D. Tex. 2007). Here, there is a clear conflict between Texas law governing the recoverability of attorney's fees in a case like this one and the laws of Nevada and New York law. While Texas's anti-SLAPP law does not provide a

*substantive* claim for fee-shifting, Nevada's and New York's anti-SLAPP laws do. Nev. Rev. Stat. 41.670; N.Y. Civ. Rights Law § 70-a(1).

As to the second step, the general rule is that "[w]hen a natural person claims that he has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." *Levine v. CMP Pubs., Inc.*, 738 F.2d 660, 667 (5th Cir. 1984) (citation omitted). Here, that state is Nevada, where Patel lives. (Dkt. 1 ¶ 2). But in cases of nationwide publication, it is only "presumptive" that the law of the plaintiff's domicile applies, and that presumption can be overcome if 'some other state has a more significant relationship to the issue[.]'" *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 168 (S.D.N.Y. 2021) (applying New York law where Florida plaintiff sued New York publisher); *see also Paucek v. Shaulis*, 349 F.R.D. 498, 526 (D.N.J. 2025) (applying law of state in which publication was made, not state of plaintiff's domicile). Moreover, under the doctrine of dépeçage, which Texas applies, choice of law is determined on an issue-by-issue basis. *See Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283 & n.2 (Tex. App.—Beaumont 2019, no pet.). Because fee-shifting pursuant to an anti-SLAPP statute constitutes a speech-protective immunity for defendants, the choice-of-law analysis focuses heavily on the state from which the defendant's speech emanated—here, New York—not the residence of the plaintiff. *See, e.g.*, *Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313, 1324 (D. Utah 2015) (applying dépeçage and holding that California, where speech originated, had most significant relationship to issue).

Patel argues that Nevada's and New York's fee-shifting statutes "do not apply in this Court because [they are] triggered by a procedural rule that is incompatible with Federal Rules 12 and 56, similar to Texas's anti-SLAPP statute." (Dkt. 19 at 3). In support of this argument, he purports to quote the Fifth Circuit's decision in *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019), as holding that such a "fee-shifting framework" violates Rules 12 and 56. (Dkt. 19 at 3). But Patel misquotes *Klocke*, which refers to a "*burden*-shifting framework," not a "*fee*-shifting framework." 936 F.3d at 245. The Second Circuit and district courts in that circuit have repeatedly rejected Patel's argument that the *fee*-shifting provisions in Nevada's and New York's anti-SLAPP laws conflict with Rules 12 and 56, finding such provisions "unproblematic" under *Erie*. *See, e.g.*, *Adelson*, 774 F.3d at 809 (applying Nevada statute's fee-shifting provision).

This is not an issue on which the Fifth and Second Circuits are split. Just as the Fifth Circuit rejected the Texas statute's *burden*-shifting procedures in *Klocke* on the grounds that they were incompatible with Rules 12 and 56, the Second Circuit rejected the *burden*-shifting dismissal procedures of California's statute, on which Texas's law is modeled. *See La Liberte v. Reid*, 966 F.3d 79, 86-87 (2d Cir. 2020) (following *Klocke*). *Klocke* and *La Liberte* also rejected the *fee*-shifting provisions of the Texas and California statutes, respectively, because they were triggered by the inapplicable dismissal procedures. But *La Liberte* noted that Nevada's anti-SLAPP law "is quite different" in that it provides a *substantive* immunity for certain speech, not merely the procedural mechanisms to secure dismissal of meritless claims. *Id.* at 86 n.3. Thus, even if the procedural aspects of Nevada's statute do not apply in federal court, its fee-shifting provision does. *Id.*

Applying this analysis, district courts in the Second Circuit have repeatedly recognized that *La Liberte* is no impediment to awarding fees under New York law to a prevailing defendant on a Rule 12(b)(6) motion. For example, in a recent defamation case arising out of comments on a cable news show, Judge Oetken dismissed the claims, including because the statements were not actionable and the plaintiffs failed to plead actual malice. *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 172-80 (S.D.N.Y. 2024). On the separate issue of attorney's fees, the court rejected the plaintiffs' *Erie* objection:

> The only procedural rule that the Court is applying is a federal rule: Rule 12(b)(6). The only element of New York's anti-SLAPP law that the Court is applying is *substantive*: the rule that a defendant is entitled to fees in a defamation action that is "without substantial basis in fact and law."

*Id.* at 183 (emphasis in original). In other words, "the anti-SLAPP law here—a motion for attorney's fees upon a Rule 12(b)(6) dismissal—is doing no procedural work; it is merely defining the substantive standard for entitlement to attorney's fees." *Id.* at 185. Numerous courts and commentators agree. *See, e.g.*, *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 566-69 (S.D.N.Y. 2025) (claim for fees under New York's anti-SLAPP statute brought in federal court after separate Rule 12(b)(6) dismissal); *Paucek*, 349 F.R.D. at 512-16 (New Jersey anti-SLAPP fee-shifting applies after Rule 12(b)(6) dismissal); Matthew L. Schafer & Tanvi Valsangikar, *The Application of the New York Anti-SLAPP Scheme in Federal Court*, 2 J. FREE SPEECH L. 573 (2023).

## CONCLUSION

The Court should dismiss Director Patel's claim with prejudice and award Figliuzzi costs and reasonable attorney's fees, to be proven by separate application.

Respectfully submitted,

*/s/ Marc A. Fuller*

Marc A. Fuller
Attorney-in-Charge
Texas State Bar No. 24032210
S.D. Tex. Bar No. 2035080
mfuller@jw.com
Maggie I. Burreson
Texas State Bar No. 24116150
S.D. Tex. Bar No. 3689815
mburreson@jw.com
Abigail A. Lahvis
Texas State Bar No. 24138136
S.D. Tex. Bar No. 3901286
alahvis@jw.com
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-5793
Facsimile:  (214) 953-5822

N. Scott Fletcher
Texas State Bar No. 00789046
S.D. Tex. Bar No. 16546
Kenneth P. Held
Texas State Bar No. 24030333
S.D. Tex. Bar No. 29197
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
Phone : 713.255.0414
Fax : 713.255.0419
sfletcher@fletcherheld.com

Thomas S. Leatherbury
Texas State Bar No. 12095275
S.D. Tex. Bar No. No. 19358
tom@tsleatherburylaw.com
Thomas S. Leatherbury Law, PLLC
Cumberland Hill School Building
1901 N. Akard St.
Dallas, TX 75201
Phone: (214) 213-5004

Peter B. Steffensen
Texas State Bar No. 24106464
S.D. Tex. Bar No. 3372006
psteffensen@smu.edu
SMU Dedman School of Law
First Amendment Clinic
P.O. Box 750116
Dallas, TX 75275
Phone: (214) 768-4077

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

I hereby certify that, on July 24, 2025, I conferred with Jason C. Greaves, Esq., counsel for Director Patel. Mr. Greaves stated that Director Patel opposes the relief requested in this motion.

*/s/ Marc A. Fuller*
Marc A. Fuller

## CERTIFICATE OF SERVICE

I hereby certify that service of a true and correct copy of the above and foregoing document will be accomplished through the notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 5th day of September, 2025, to the following:

Jason C. Greaves, Esq.
Jesse R Binnall, Esq.
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, VA  22314
Telephone: (703) 888-1943
Facsimile:  (703) 888-1930
jason@binnall.com
jesse@binnall.com
*Counsel for Plaintiff Kashyap P. Patel*

*/s/ Marc A. Fuller*
Marc A. Fuller