IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston Division

KASHYAP PATEL,

        *Plaintiff,*

v.

        Case No. 4:25-cv-02548

CESARE FRANK FIGLIUZZI, JR,

        *Defendant.*

**PLAINTIFF KASHYAP PATEL'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Jason C. Greaves, TBN 24124953
BINNALL LAW GROUP
717 King Street
Suite 200
Alexandria, VA 22314
(703) 888-1943
Fax: (703) 888-1930
jason@binnall.com

*Attorney for Kashyap Patel*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES.......................................................... ii

BACKGROUND ...................................................................... 1

STANDARD OF REVIEW .......................................................... 2

ARGUMENT .......................................................................... 3

      I.    The Court should deny Defendant's motion because Defendant's statements were defamatory, not protected speech.......................... 3

           a.   Defendant's claim is untrue on its face........................................ 3

           b.   A reasonable viewer could conclude that Defendant's claim is true.......................................................................... 8

           c.   The Court should deny Defendant's motion because Defendant made his statements with actual malice. ................................. 12

      II.   The Court should deny Defendant's motion for attorney's fees because applicable law does not allow for fee-shifting. ................... 15

           a.   Texas is the correct choice of law. ............................................ 15

           b.   Regardless, anti-SLAPP does not apply. .................................... 16

CONCLUSION ...................................................................... 25

CERTIFICATE OF SERVICE .................................................... 26

## TABLE OF AUTHORITIES

<u>Cases</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 2

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 2, 17

*Belli v. Orlando Daily Newspapers, Inc.*,
  389 F.2d 579 (5th Cir. 1967) ...................................................................... 12

*Bentley v. Bunton*,
  94 S.W.3d 561 (Tex. 2002) ................................................................ 4, 10, 11, 14

*Bobulinski v. Tarlov*,
  758 F. Supp. 3d 166 (S.D.N.Y. 2024) ........................................................ 20

*Brady v. NYP Holdings, Inc.*,
  No. 21-cv-3482, 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) ..................... 23

*Braun v. Flynt*,
  726 F.2d 245 (5th Cir. 1984) ........................................................................ 7

*Brown v. Petrolite Corp.*,
  965 F.2d 38 (5th Cir. 1992) ........................................................................ 13

*Carr v. Brasher*,
  776 S.W.2d 567 (Tex. 1989) ........................................................................ 3

*Carroll v. Trump*,
  590 F. Supp. 3d 575 (S.D.N.Y. 2022) ........................................................ 21

*Carson v. Allied News Co.*,
  529 F.2d 206 (7th Cir. 1976) ...................................................................... 14

*Celle v. Filipino Reporter Enterprises Inc.*,
  209 F.3d 163 (2d Cir. 2000) ........................................................................ 14

*Chevalier v. Animal Rehab. Ctr., Inc.*,
  839 F. Supp. 1224 (N.D. Tex. 1993) .......................................................... 15

*Chinese Americans Civil Rights Coalition, Inc. v. Trump*,
  No. 21-cv-4548, 2022 WL 1443387 (S.D.N.Y. May 6, 2022) ..................... 23

*Coker v. Sassone*,
  135 Nev. 8 (2019) ........................................................................................ 18

*Colony Ins. Co. v. Peachtree Const. Ltd.*,
    647 F.3d 248 (5th Cir. 2011) ................................................................. 2

*Curtis Publishing Co. v. Butts*,
    388 U.S. 130 (1967) ..................................................................... 12, 25

*Editor's Pick Luxury LLC v. Red Points Solutions SL*,
    No. 22-cv-7463, 2023 WL 6385993 (S.D.N.Y. Sept. 29, 2023) ................. 22

*Favre v. Sharpe*,
    117 F.4th 342 (5th Cir. 2024) ........................................................ 4, 10

*Franklin v. Thompson*,
    722 So. 2d 688 (Miss. 1998) .................................................................. 4

*Friedman v. Bloomberg, L.P.*,
    No. 3:15-cv-443, 2022 WL 1004578 (D. Conn. Apr. 4, 2022) ................... 22

*Green v. City of Mission*,
    No. 7:18-cv-49, 2019 WL 3217033 (S.D. Tex. Jul. 17, 2019) ..................... 7

*Gutierrez v. Collins*,
    583 S.W.2d 312 (Tex. 1979) ................................................................ 15

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ........................................................................... 16

*Hilton v. Prause*,
    No. 5:19-cv-755-JKP-HJB, 2019 WL 11553493 (S.D. Tex. Nov. 26, 2019) ........... 18

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) ............................................................................... 8

*Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*
    892 F.3d 719 (5th Cir. 2018) ................................................................. 2

*Isaly v. Garde*,
    213 N.Y.S.3d 852 (N.Y. Sup. Ct. 2024) ................................................. 20

*Keitzke v. Williams*,
    490 U.S. 319 (1989) ......................................................................... 2, 7

*Kesner v. Buhl*,
    590 F. Supp. 3d 680 (S.D.N.Y. 2022) ............................................... 21, 22

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ..................................................... 16, 17, 19

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020) ............................................................... 18, 24

*LaNasa v. Stiene*,
  731 F. Supp. 3d 403 (S.D.N.Y. 2024) ...................................................... 22

*Letter Carriers v. Austin*,
  418 U.S. 264 (1974).................................................................................. 4

*Levine v. CMP Publications, Inc.*,
  738 F.2d 660 (5th Cir. 1984) .................................................................. 13

*LoanStreet, Inc. v. Troia*,
  No. 21-cv-6166, 2023 WL 5836237 (S.D.N.Y. Sept. 8, 2023) ................... 21

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)................................................................................ 8, 10

*Morris v. Blanchette*,
  181 S.W.3d 422 (Tex. App. 2005) ............................................................. 4

*Nat'l Acad. of Television Arts and Sci., Inc. v. Multimedia Sys. Design, Inc.*,
  551 F. Supp. 3d 408 (S.D.N.Y. 2021) ................................................. 21, 23

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964)............................................................................. 3, 12

*O'Gara v. Binkley*,
  384 F. Supp. 3d 674 (N.D. Tex. 2019) ..................................................... 16

*Prince v. Intercept*,
  634 F. Supp. 3d 114 (S.D.N.Y. 2022) ...................................................... 22

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)............................................................................. 4, 14

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987) (en banc) ................................................. 14

*Texas Beef Group v. Winfrey*,
  201 F.3d 680 (5th Cir. 2000) .................................................................. 10

*Torah of Mount Ivy*,
  No. 22-cv-10502, 2024 WL 37122 (S.D.N.Y. Jan. 3, 2024)...................... 22

*Turner v. KTRK Television, Inc.*,
  38 S.W.3d 103 (Tex. 2000) ....................................................................... 4

*Turner v. Pleasant,*
  663 F.3d 770 (5th Cir. 2011) ................................................................. 2

*Wang v. Sussman,*
  No. 24-cv-3987 (AS), 2025 WL 2607155 (S.D.N.Y. Sept. 9, 2025) ......................... 19

*Watson v. NY Doe 1,*
  No. 19-cv-533, 2023 WL 6540662, at *6 (S.D.N.Y. 2023)................................. 21

*WFAA-TV, Inc. v. McLemore,*
  978 S.W.2d 568 (Tex. 1998) ................................................................ 3

*Wood v. Hustler Magazine, Inc.,*
  736 F.2d 1084 (5th Cir. 1984) .............................................................. 15

*Zerangue v. TSP Newspapers, Inc.,*
  814 F.2d 1066 (5th Cir. 1987) .............................................................. 12

## Statutes

N.Y. CIV. RTS. L. § 70-a................................................................... 19, 21, 22

N.Y. CIV. PRAC. L. & R. (CPLR) § 3211(g)................................................. 19, 20, 22

NEV. REV. STAT. § 41.660................................................................. 18

NEV. REV. STAT. § 41.665................................................................. 18

NEV. REV. STAT. § 41.670................................................................. 18

## Other Authorities

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337.2
  (4th ed. 2021) ........................................................................... 24

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 cmt. e (1971) .............................. 15

## Rules

FED. R. CIV. P. 11 ....................................................................... 23

FED. R. CIV. P. 12(b)(6) ............................................................... 2, 7, 12, 17, 19, 20

Defendant asks this Court to ignore what he actually said about FBI Director Kash Patel on national television, pretending he said something else. And while his carefully word-smithed pleadings attempt to recast his statement as being a "hyperbolic" commentary on Dir. Patel's "social life," that is not even close to what viewers of MSNBC saw. Defendant claimed that he—a former "seventh floor" FBI official himself—had heard reports that Dir. Patel had been "visible at nightclubs far more than he has been on the seventh floor of the Hoover building." Defendant did *not* say he had heard reports that Dir. Patel had attended hockey games or UFC fights, or that he holds a membership at a social club near his home—he said that Dir. Patel was spending more time at *nightclubs* than at work. The deliberate and defamatory implication is that FBI insiders had told Defendant that Dir. Patel was shirking his duties to the American people in favor of late-night debauchery.

Accordingly, Dir. Patel brought this case to protect his reputation and hold Defendant accountable for this malicious smear. Dir. Patel respectfully requests that this Court deny Defendant's motion to dismiss in its entirety, and also deny Defendant's attempts to employ the anti-SLAPP statues of other states that do not have the most significant relationship to this case.

## BACKGROUND

On May 2, 2025, Defendant was interviewed on the MSNBC show, "Morning Joe." Compl. at ¶ 9. During this segment, Defendant stated: "Reportedly, [Dir. Patel has] been visible at nightclubs far more than he has been on the seventh floor of the Hoover building." *Id.* at ¶ 10. This assertion is facially false, as Dir. Patel has not

1

even entered a nightclub since becoming Director of the FBI, much less spent significant amounts of time there as blithely alleged by Defendant. *Id.* at ¶¶ 11, 12. Defendant apparently does not dispute that his statement was false.

## STANDARD OF REVIEW

To prevail on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a defendant must show that, even when viewed in the light most favorable to the plaintiff, the complaint is not plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–57 (2007). When considering plausibility courts must consider only the sufficiency of the complaint, not the merits of the case itself or the likelihood of the facts alleged. *See Keitzke v. Williams*, 490 U.S. 319, 327 (1989).

The Supreme Court defined plausibility as "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly* 550 U.S. at 555). This reasonable inference must rise "above the speculative level, but the complaint may survive a motion to dismiss even if recovery seems very remote and unlikely." *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.* 892 F.3d 719, 726 (5th Cir. 2018) (citing *Twombly*, 550 U.S. at 555–56). "[T]he complaint must provide more than conclusions, but it 'need not contain detailed factual allegations.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Colony Ins. Co. v. Peachtree Const. Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011)). Therefore, the complaint, when viewed in the manner most favorable to plaintiff, must allege

2

facts sufficient to allow the court to draw a reasonable inference that defendant is liable for the alleged tortious conduct.

ARGUMENT

Defamation has three elements, requiring a plaintiff to prove that the defendant "(1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with [] actual malice." *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279—280 (1964)). Here, Defendant does not challenge publication. For the reasons below, Dir. Patel has sufficiently pled a claim for defamation, and Defendant is not entitled to any fees.

## I.    The Court should deny Defendant's motion because Defendant's statements were defamatory, not protected speech.

Defendant's statement that he had heard reports of Dir. Patel spending more time in "nightclubs" than at work on the "seventh floor of the Hoover Building" are not protected hyperbole under the First Amendment because (1) the statement is entirely untrue; and (2) a reasonable viewer could conclude that Defendant's false statement and the defamatory implications to be drawn from it were, in fact, true.

### a.    Defendant's claim is untrue on its face.

Defendant argues that his statement that Dir. Patel has been "more visible at nightclubs" than at FBI headquarters is not defamatory because it is simply hyperbolic rhetoric. This, however, is a mischaracterization. Defendant did not exaggerate: Defendant told a specific lie. Specific lies that the speaker knows to be

3

false do not have the constitutional protections that rhetorical, hyperbolic statements enjoy. The types of hyperbole that courts have held to be protected under the First Amendment are consistently exaggerations rather than total fabrications. *See, e.g.*, *Letter Carriers v. Austin*, 418 U.S. 264, 282–83 (1974) (holding that exaggerated, inflammatory terms such as "scab" and "traitor" are not defamatory). Conversely, total fabrications are not entitled to protection of law. In *St. Amant v. Thompson*, the Supreme Court held that "[p]rofessions of good faith will be unlikely to prove persuasive . . . where a story is fabricated by the defendant." 390 U.S. 727, 732 (1968). Whether a statement is false and defamatory "depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (quoting *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000)). The same is true when determining whether a publication is actionable. *Id.*

While determining whether statements are capable of being actionable is an initial question for the court, if the statements are "of ambiguous or doubtful import, the jury must determine its meaning." *Turner*, 38 S.W.3d at 114. The determination turns on whether the statement can be objectively verified. *Morris v. Blanchette*, 181 S.W.3d 422, 424 (Tex. App. 2005). "[A] statement, even if phrased as an opinion, will not enjoy constitutional protection if the court concludes that its substance or gist could reasonably be interpreted as declaring or implying an assertion of fact." *Favre v. Sharpe*, 117 F.4th 342, 346 (5th Cir. 2024) (quoting *Franklin v. Thompson*, 722 So. 2d 688, 693 (Miss. 1998)).

4

Defendant's allegation that Dir. Patel was spending time in nightclubs falls squarely within this second category: it is a fabrication. Defendant did not exaggeratedly call Dir. Patel "lazy," or "negligent," which would have been protected speech. Defendant told a specific lie that Dir. Patel spends more time in nightclubs than at FBI headquarters. To distract from the clear falsity of this claim, Defendant spends much of his motion focusing on the proportionality aspect of the statement: that Dir. Patel spends *more* time in the public eye than some of his predecessors. But this framing of the argument only deals with half of the allegation. Defendant not only accused Dir. Patel of spending more time out of the office than in it, but that Dir. Patel specifically spends time *in nightclubs*. This is an altogether different accusation for two reasons. First, it is verifiably false. Second, the accusation that Dir. Patel wiles away *any* of his time at nightclubs—ignoring the proportionality entirely— carries specific implications and subtext of unprofessionalism. Nightclubs—unlike hockey games or social clubs—are associated with profligate bottle service, obscene-hour partying, casual sexual encounters, and drug and alcohol abuse, any of which would be inappropriate for a middle-aged, professional man, and would be entirely reckless and unacceptable for the Director of the FBI.

Since becoming Director of the FBI, Dir. Patel has not gone to any nightclub, whether in Las Vegas, or anywhere else. Defendant effectively admitted as much in his motion to dismiss. Truth, as Defendant well knows, is an absolute defense to claims of defamation, yet *nowhere* in his motion does Defendant claim it is true that Dir. Patel frequents nightclubs as he alleged on *Morning Joe*. If Defendant actually

believed his story about Dir. Patel frequenting nightclubs, then one would reasonably expect him to assert as much in his motion to dismiss. Defendant, however, made no such claim in his motion because he knew that Dir. Patel has never patronized a nightclub as Director of the FBI.

Instead, Defendant seeks to recharacterize his statements as sarcasm to excuse the objective falsity of his claims. But this does not absolve Defendant from liability. To accept this argument is to accept that a Defendant can purge himself of responsibility if his lie is sufficiently outrageous. Defendant claims that his words that Dir. Patel "has been visible at nightclubs far more than" in Washington is somehow different than accusing Dir. Patel of actually patronizing nightclubs. If the plain meaning was not the intent of Defendant's statement, then there is little left of Defendant's statement at all. If Defendant had meant to criticize Dir. Patel's attendance at sporting events or concerts, as Defendant now argues he intended, he could have said so. Instead, Defendant fabricated a specific and targeted lie that he knew was entirely false.

To support his assertion that he was sarcastically referencing Dir. Patel's public appearances at sporting events and concerts, Defendant cites numerous articles in his brief detailing Dir. Patel's social life, including Dir. Patel's membership at a prestigious social club notwithstanding the fact that he was a member *prior* to his confirmation as Director, and there has been no allegation that he has even

attended his social club since being FBI Director.[1] The Court should disregard this argument for two reasons.

First, references to Dir. Patel's public appearances are outside of the Complaint. These references are, therefore, outside the scope of the Federal Rule of Civil Procedure 12(b)(6), motion which gauges only the strength of the complaint not the merits of any possible defense that Defendant might raise later. *See Keitzke*, 490 U.S. at 327; *see also Green v. City of Mission*, No. 7:18-cv-49, 2019 WL 3217033, *3 (S.D. Tex. Jul. 17, 2019) ("Additionally, a court may take judicial notice of newspaper articles to demonstrate that certain facts were generally known within the court's jurisdiction, but not the truth of the facts reported in the newspaper article."). Second, Defendant made no mention of any of these reports when he made his comments on *Morning Joe*. He said nothing about Dir. Patel's open and transparent travel and appearances at public events. He instead fabricated a story about nightclubs.

Defendant's choice of accusation that Dir. Patel was patronizing "nightclubs" was deliberate. The very word "nightclub" carries with it sleazy suggestions of neon, alcohol, and sex. The Fifth Circuit has found such sexual implications to contribute to defamatory meanings of publications. *See, e.g.*, *Braun v. Flynt*, 726 F.2d 245 (5th Cir. 1984) (holding that the unauthorized use of a plaintiff's likeness in a

---

[1] Even if this Court were to consider the prior reporting on Dir. Patel, and his membership at a social club, which is an allegation outside the Complaint, Defendant's reliance on this comparison is unavailing. A social club is akin to a country club, where members go to socialize, have dinner, and make use of pool and gym facilities. It bears no resemblance to a nightclub and caters to an entirely different clientele.

pornographic magazine was defamatory). By claiming that Dir. Patel was spending more time in *nightclubs* rather than in the other locations that Defendant later stated in his motion that Dir. Patel had attended, Defendant deliberately mischaracterized Dir. Patel as an irresponsible playboy. Because Defendant made a specific, and false, statement about a specific activity that Dir. Patel has not engaged in, Defendant is liable for defamation.

### b.    A reasonable viewer could conclude that Defendant's claim is true.

To determine whether a statement is defamatory or merely protected rhetoric, the court must consider whether a reasonable factfinder would believe that the Defendant's statements were objectively true. The Supreme Court has held that "the dispositive question . . . becomes whether a reasonable factfinder could conclude that the statements . . . imply an assertion [that Defendant's statements were true]." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990).

Defendant cites *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 48 (1988), to defend his assertion that his false statement was satire, hyperbole, or otherwise not meant literally or seriously. In *Hustler*, the Supreme Court held that a satirical advertisement involving a public televangelist was protected as hyperbole because of the context in which it appeared. *Hustler*, 485 U.S. at 48. Specifically, the satirical advertisement appeared in a humor magazine in a specifically labeled "parody" section of the issue. *Id.* It had an explicit disclaimer: "not to be taken seriously." *Id.* Therefore, it could not reasonably be understood to be describing actual facts. *Id.* at 57. Defendant also attempts to compare his appearance on *Morning Joe*—a cable

8

*news* program—with America's longest-running comedy program, *Saturday Night Live.* Dkt. No. 25 at 10.

There is, of course, a key distinction here. Defendant is neither a comedian, nor satirist, and he did not appear on a comedy channel or program. Defendant is a columnist employed by MSNBC, a cable *news* channel, specifically for his expertise on the inner workings of the FBI. Defendant was not on the show to make sarcastic or comedic statements that his audience understood to be satire, as was the case in the *Hustler* and *Saturday Night Live* examples cited by Defendant. MSNBC paid Defendant to appear on *Morning Joe* to discuss the ongoings of the FBI: to inform the general public what is happening at the FBI. Because Defendant appeared on a news-related program purportedly as a factual commentator, those who viewed and heard his statements on *Morning Joe* could reasonably have understood them to be factual. Notwithstanding his contention that his words were meant entirely sarcastically and rhetorically, he stated, in his capacity as a journalist, that Dir. Patel was seen "at nightclubs," and his viewers, trusting his authority and experience, could reasonably accept his words as true.

A critical component in this inquiry is the availability of the knowledge relied upon by a Defendant. For example, in *Favre*, the Fifth Circuit held:

> [T]here also was no implication from [Defendant's] statements that he was relying on information from other sources when he said [Plaintiff] 'stole money' and took from the 'underserved.' At the time Defendant made the statements, *the facts on which he was relying were publicly known*, and Sharpe had a right to characterize those publicly known facts caustically and unfairly.

*Favre*, 117 F.4th at 348 (emphasis added). The Fifth Circuit reached that conclusion based largely on the fact that the Defendant relied *only* on widely known, disclosed facts. Similarly, in *Texas Beef Group v. Winfrey*, the Fifth Circuit held that a Defendant's strong opinion was not actionable because it was "based on truthful, *established* fact." 201 F.3d 680, 688 (5th Cir. 2000) (emphasis added). Therefore, only statements rooted in established, publicly known, verifiable fact are protected from defamation liability.

Here, Defendant did not base his comments on widely known, or accepted, facts. To the contrary, he based his remarks on unspecified "reports" that Dir. Patel had been far more visible at "nightclubs" than in Washington. Defendant claims that he exaggerated known facts to comment on Dir. Patel's known public appearances. But that is not what Defendant said on *Morning Joe*. Defendant did not comment on Dir. Patel's appearances at hockey games or UFC fights. He cited undisclosed "reports" to state that Dir. Patel frequents nightclubs when Defendant knew full well that this statement was objectively false. A defendant cannot claim protections of opinion if they base it on undisclosed defamatory facts. *See Milkovich*, 497 U.S. at 17–18.

The context of Defendant's comments further strengthens the possibility that his audience could understand his words literally. Courts are instructed to look at the entirety of the publication. *Bentley*, 94 S.W.3d at 579. In *Bentley*, the Texas Supreme Court was required to determine whether the term "corrupt" could be defamatory. *Id.* at 585. In doing so, it answered the question in the affirmative

because, given the publication's context, a reasonable viewer could view the use of the term "corrupt" as an assertion of fact. *Id.*

In this case, the hosts of *Morning Joe* prompted Defendant to comment on Dir. Patel supposedly taking a "surprisingly back-seat" role during his first weeks on the job and has been "less visible" than "Trump observers expected." The precise meaning of this prompt is unclear. It could have meant that Democrat commentators, like those that work for *Morning Joe*, were expecting Dir. Patel to be more brash and bombastic, give more interviews, or make more public appearances. It could have meant that Trump supporters were expecting him to immediately announce high-profile investigations, and he was being surprisingly cautious. Under no stretch of the imagination, however, was that prompt asking Defendant about Dir. Patel's social life or his love of hockey.

It was in this context that Defendant chose to fabricate his story about nightclubs and portray Dir. Patel as derelict in his duties. The reasonable viewer could conclude that Defendant's fabrication that Dir. Patel was frequenting nightclubs was true exactly because the fabrication was included in an ongoing conversation about established facts. Defendant could have stated that Dir. Patel has spent more time at public appearances like sporting events than previous Directors of the FBI, but Defendant did not say that. Defendant deliberately lied about Dir. Patel, that he was spending too much time partying, to cast him in a negative light and defame him. Defendant cannot retroactively backpedal his remarks to claim that they were hyperbolic rhetoric in his futile attempt to avoid liability.

11

At the very least, the defamatory import should be determined by a trier of fact. When there are two competing, reasonable interpretations of whether a statement is defamatory, it is a question for the jury. *See Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 584 (5th Cir. 1967) ("The defendants make a case— just barely—for the view that the article is capable of being reasonably interpreted as non-defamatory. But since the article on its face is also capable of carrying a defamatory meaning, it is for the jury to decide whether the words were in fact so understood.") In this case, Dir. Patel posits that the only reasonable interpretation is that Defendant was making the outright accusation that Dir. Patel has been a frequent visitor of nightclubs, thereby neglecting his job as Director of the FBI.

### c.   The Court should deny Defendant's motion because Defendant made his statements with actual malice.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint by a public figure must adequately allege that Defendant made his defamatory statements with "actual malice." *New York Times Co. v. Sullivan,* 376 U.S. 254, 283 (1964). The Supreme Court defined "actual malice" as "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Id.* This requirement can be satisfied "when a defendant fail[s] to investigate a story weakened by inherent improbability, internal inconsistency, or apparently reliable contrary information." *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070 (5th Cir. 1987) (citing *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967)).

12

Failure to verify critical details which damage another person can be adequate basis to find actual malice. For example, in *Levine v. CMP Publications, Inc.*, the Fifth Circuit held that a newspaper author who mischaracterized a civil suit as a criminal proceeding in which a judgment had been rendered had acted knowingly or recklessly. 738 F.2d 660, 675 (5th Cir. 1984). Similarly, in *Brown v. Petrolite Corp.*, an oil company published a report which purported to show negative effects from a competitor's product without first verifying that the products used in the testing were actually the ones sold by the competitor. 965 F.2d 38, 48 (5th Cir. 1992). The Fifth Circuit held that this failure was actual malice by the defendant "not because it failed to investigate but because despite knowledge of the limitations of its investigation and of reliable, contrary information it published false statements defaming [Plaintiff]." *Id.*

Here, Defendant was aware of what he knew and what he did not. As exhibited by his motion to dismiss, Defendant apparently had a clear picture of Dir. Patel's public appearances. He knew that Defendant had not frequented any nightclubs. Even if he had a lapse of memory when he made his statements, the likelihood of harm to Dir. Patel's reputation from his statement was reckless and should have compelled him to verify his accusation prior to making it. This is similar to *Brown v. Petrolite Corp.*, which imputed actual malice to a party who, "despite knowledge of the limitations of its investigation and of reliable contrary information . . . publish[] false statements." 965 F.2d 38, 48 (5th Cir. 1992).

13

Furthermore, as the Supreme Court has noted, "[p]rofessions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination." *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Here, there was simply no basis to assert that Dir. Patel had been frequently partying in nightclubs, thereby, neglecting his duties. Instead, Defendant fabricated it entirely. And to the extent Defendant based this assertion on prior reporting on Dir. Patel's social life, none of this reporting indicated Dir. Patel had been frequenting or even set foot in a nightclub. As the Seventh Circuit held:

> If a writer can sit down in the quiet of his cubicle and create conversations as 'a logical extension of what must have gone on' and dispense this as news, it is difficult to perceive what First Amendment protection such fiction can claim.

*Carson v. Allied News Co.*, 529 F.2d 206 (7th Cir. 1976). The same logic applies here.

Finally, while "lack of care or an injurious motive in making a statement is not alone proof of actual malice," they "are factors to be considered." *Bentley*, 94 S.W.3d at 596. "Evidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice." *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (citing *Tavoularas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (en banc)).

Here, as pled, Defendant exhibits significant animus toward Dir. Patel, and was motivated to sensationalize, and in this case, fabricate a story to self-promotingly advance his own name recognition, at the expense of Dir. Patel. Compl. at ¶¶ 15–19. Accordingly, considering the combination of this evidence, Dir. Patel has met his

14

burden at the pleading stage by creating a reasonable inference that Defendant made the false statement with knowledge that it was false or with reckless disregard of whether it was false or not.

## II.   The Court should deny Defendant's motion for attorney's fees because applicable law does not allow for fee-shifting.

### a.   Texas is the correct choice of law.

In Texas, "conflicts cases sounding in tort will be governed by the 'most significant relationship' test as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts." *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). "Section 6 of the Restatement recites general principles, and section 145 lists the contacts to be considered in applying section 6 to evaluate the significance of the relationship of a state's law to the parties, the issue, and the occurrence, ultimately to decide which law to apply." *Wood v. Hustler Magazine, Inc.*, 736 F.2d 1084, 1087 (5th Cir. 1984). These factors include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1229 (N.D. Tex. 1993) (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 cmt. e (1971)).

In this case, the factors are all over the map. The place where the injury occurred is Washington, D.C., as Defendant's statements were directed at Dir. Patel's employment in Washington, D.C. The place where Defendant made his defamatory

15

comments was New York. Dir. Patel is domiciled in Nevada, and Defendant in Texas. And the parties do not have any relationship beyond this case.

As the Northern District of Texas has held, "in the anti-SLAPP context, courts typically consider the place where the allegedly tortious conduct occurred and the speaker's domicile in determining what state's law to apply." *O'Gara v. Binkley*, 384 F. Supp. 3d 674, 682 (N.D. Tex. 2019). "This is because the primary purpose behind a state's anti-SLAPP statute is to encourage and safeguard its citizens' constitutional rights." *Id.* And in *O'Gara*, where the court was unaware of whether the defendant even made the subject statements in Texas, the fact that the defendant was domiciled in Texas "weigh[ed] heavily in favor of applying Texas's anti-SLAPP statute." *Id.* Therefore, the court applied Texas law, and found that Texas's anti-SLAPP statute did not apply in federal court. *Id.* at 685. The same logic applies to this case.

### b. Regardless, anti-SLAPP does not apply.

Regardless of the law applied, however, the anti-SLAPP statute is inapplicable in a federal court sitting in diversity. "The *Erie* line of authorities holds that substantive state law must be applied in federal courts in diversity cases like this one, but state procedural law yields to the applicable Federal Rules." *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019) (citing *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). A state law will not apply in a federal court sitting in diversity if: "(1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Klocke*, 936 F.3d at 244 (quoting *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir.

16

2015). "Courts do not 'wade into Erie's murky waters unless the federal rule is inapplicable or invalid.'" *Id.* at 245 (quoting *Shady Grove*, 559 U.S. at 398). "[A] state rule conflicts with a federal procedural rule when it imposes additional procedural requirements not found in the federal rules." *Id.* The Fifth Circuit, therefore, concluded that because Texas's anti-SLAPP contains a burden-shift, it "imposes additional requirements beyond those found in Rules 12 and 56 and answers the same question as those rules," and "cannot apply in federal court." *Id.*

Rule 12(b)(6) governs dismissal of complaints for failure to state a claim. *Id.* at 246. "This is not an insuperable pleading barrier, and it requires no evidentiary support: 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556 (quotation marks omitted)). Texas's anti-SLAPP statute, however, "imposes additional requirements that demand judicial weighing of evidence." *Id.* Therefore, the anti-SLAPP statute conflicts with the federal rules. *Id.* Courts "may not superimpose additional requirements on the Federal Rules where the provisions 'answer the same question.'" *Id.* at 247. Accordingly, under Texas law, which Dir. Patel maintains controls this case, its anti-SLAPP statute is inapplicable.

The same logic applies to the Nevada, New York, and Washington, D.C. anti-SLAPP statutes. Defendant attempts to differentiate this case from *Klocke* by arguing that these statutes apply because they are fee-shifting statutes, not burden-shifting statutes. Dkt. No. 25 at 24. This is incorrect.

17

Under Nevada's anti-SLAPP statute, NEV. REV. STAT. § 41.670, fees are only awarded if "the court grants a special motion to dismiss filed pursuant to NRS 41.660." NEV. REV. STAT. § 41.670(1). Importantly, Nevada Revised Statute § 41.660 imposes a burden-shifting framework. The court is to determine, by a preponderance of the evidence, whether the moving party bases their claim "upon a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern." NEV. REV. STAT. § 41.660(3)(a). If so, the court then determines "whether the plaintiff has demonstrated with prima facie evidence a probability of prevailing on the claim." NEV. REV. STAT. § 41.660(3)(b). In doing so, the court may consider external evidence. NEV. REV. STAT. § 41.660(3)(d). This standard was clarified by the passing of NEV. REV. STAT. § 41.665 on June 8, 2015, *after* the Second Circuit decided *Adelson v. Harris*, and clarified the burden is the same as California's anti-SLAPP statute as of June 8, 2015. NEV. REV. STAT. § 41.665(2). As if any doubt remained, in 2019, the Nevada Supreme Court held that Nevada's anti-SLAPP statute is, in fact, a burden-shift statute. *Coker v. Sassone*, 135 Nev. 8, 12 (2019). In essence, Nevada's anti-SLAPP statute operates as a motion for summary judgment. *Id.* at 10. The Nevada Supreme Court further concluded, "California's and Nevada's statutes share a near-identical structure for anti-SLAPP review." *Id.* at 11 n.3.[2]

---

[2] Defendant relies on *La Liberte v. Reid*, which held "that California's anti-SLAPP statute is inapplicable in federal court." Dkt. No. 25 at 24 (citing *La Liberte*, 966 F.3d 79, 86-87 (2d Cir. 2020)). *See also Hilton v. Prause*, No. 5:19-cv-755-JKP-HJB, 2019 WL 11553493, at *3 (S.D. Tex. Nov. 26, 2019) (holding that California's anti-SLAPP statute does not apply in federal court).

Here, Defendant moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Nevada's anti-SLAPP statute explicitly contrasts with Rule 12 insofar as it includes burden-shifting and the taking of evidence. Therefore, it imposes additional requirements to Rule 12, which answers the same question, and cannot apply in federal court. *See Klocke*, 936 F.3d at 245. It is axiomatic that because Nevada's special motion to dismiss provision does not apply in federal court, then neither would fee shifting, which is only triggered if the burden shifting motion to dismiss— pursuant to NRS 41.660—is granted. *See id.* at 247 n.6 ("Suffice to say that because the TCPA does not apply in federal court, the district court erred by awarding fees and sanctions pursuant to it.").

The same is true of New York's anti-SLAPP statute. As Judge Arun Subramanian in the Southern District of New York recently held on September 9, 2025, "New York's statutory scheme does not contemplate an award of attorney's fees on a Rule 12(b)(6) dismissal." *Wang v. Sussman*, No. 24-cv-3987 (AS), 2025 WL 2607155, at *4 (S.D.N.Y. Sept. 9, 2025). The fee shifting provision of New York's anti-SLAPP statute specifically references another New York code section, Civil Practice Law and Rule ("CPLR") 3211(g), which is "New York's specialized motion-to-dismiss statute for cases covered by the anti-SLAPP law." N.Y. CIV. RTS. L. § 70-a; CPLR 3211(g); *Wang*, 2025 WL 2607155 at *4. In *Wang*, the defendant did not invoke NY CPLR 3211(g), and, instead, invoked Rule 12(b)(6). *Id.* New York's anti-SLAPP statute, however, "specifically references CPLR 3211(g) without purporting to make attorney's fees available to parties who obtain dismissal by other means." *Id.* (internal

19

citations omitted). Declining to apply *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166 (S.D.N.Y. 2024), the court held, "in terms of a motion to dismiss, CPLR 3211(g) is the only statute referenced." *Wang*, 2025 WL 2607155 at *5.

The legislature's amendment to New York's anti-SLAPP statute in 2020 clarifies that its reference to CPLR 3211(g) was not just an example of obtaining an adjudication entitling a movant to fees. *Id.* The amendment was enacted in direct response to decisions holding otherwise. *Id.* (quoting *Isaly v. Garde*, 213 N.Y.S.3d 852, 861 (N.Y. Sup. Ct. 2024)). "If the legislature wanted to further broaden the statute's reach to federal dismissals under Rule 12 (or Rule 56), it could and would have said so." *Id.* "The legislature decided not to refer to all dismissals of a complaint, or specifically to Rule 12 dismissals, but to solely refer to CPLR 3211(g)." *Id.* Importantly, because New York's anti-SLAPP statute is a derogation of the common law, it must be narrowly construed. *Id.* at *6. And that is especially true where CPLR 3211(g) creates procedures to obtain discovery to demonstrate a substantial basis in law, which is unavailable to plaintiffs on a Rule 12(b)(6) motion. *Id.*

That the Defendant in this case moved to dismiss solely under Rule 12(b)(6)—he could not move under CPLR 3211(g), which is procedural in nature—is fatal to his claim for fees under New York's anti-SLAPP statute. And while the *Wang* court did not wade into an *Erie* analysis of whether fee shifting could ultimately apply in federal court, it is evident that it could not.

The purpose of the 2020 amendment to New York's anti-SLAPP statute was "to broaden the scope of the law and provide greater protections to defendants." *Nat'l*

*Acad. of Television Arts and Sci., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021). In *National Academy of Television Arts and Sciences*, the court discussed how under New York's anti-SLAPP law, "a defendant may recover 'damages, including costs and attorney's fees,' by bringing a special motion to dismiss pursuant to CPLR 3211(g)." *Id.* And under § 3211(g), a motion to dismiss must be granted "unless the plaintiff demonstrates 'that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law.'" *Id.* at 430–31. Applying *La Liberte*, the court found "that the 'substantial basis' standard articulated in New York's anti-SLAPP law similarly conflicts with the standards under FRCP 12 and 56. *Id.* at 431. Indeed, contrary to the Federal Rules, the burden *shifts* to the plaintiff to demonstrate that his claims have a "substantial basis in law." *Id.* at 432 (quoting CPLR 3211(g)). Accordingly, the court found that, because Rules 12 and 56 answer the same question as New York's anti-SLAPP law, and these Federal Rules do not violate the Rules Enabling Act, "New York's anti-SLAPP law is inapplicable in federal court." *Id.*

This has been a controlling theme in New York federal courts. *See, e.g.*, *Kesner v. Buhl*, 590 F. Supp. 3d 680, 701 (S.D.N.Y. 2022) ("granting relief under § 70-a would require the Court to apply a state procedural standard that conflicts with the Federal Rules of Civil Procedure."); *Carroll v. Trump*, 590 F. Supp. 3d 575, 585 (S.D.N.Y. 2022) (same); *LoanStreet, Inc. v. Troia*, No. 21-cv-6166, 2023 WL 5836237, at *6 (S.D.N.Y. Sept. 8, 2023) (same); *Watson v. NY Doe 1*, No. 19-cv-533, 2023 WL 6540662, at *6 (S.D.N.Y. 2023) (same); *Prince v. Intercept*, 634 F. Supp. 3d 114, 141–

142 (S.D.N.Y. 2022) (same); *Editor's Pick Luxury LLC v. Red Points Solutions SL*, No. 22-cv-7463, 2023 WL 6385993, at *6 (S.D.N.Y. Sept. 29, 2023) (same); *LaNasa v. Stiene*, 731 F. Supp. 3d 403, 416–17 (S.D.N.Y. 2024); *Coritsidis v. Khal Bnei Torah of Mount Ivy*, No. 22-cv-10502, 2024 WL 37122, at *6 (S.D.N.Y. Jan. 3, 2024). Even the District of Connecticut has found New York's anti-SLAPP law inapplicable in federal court. *See Friedman v. Bloomberg, L.P.*, No. 3:15-cv-443, 2022 WL 1004578, at *1 (D. Conn. Apr. 4, 2022) (denying defendants' motion to amend as futile because the "substantial basis" standard in New York's anti-SLAPP law conflicts with Rule 12 and 56).

In sum, a plain reading of the law dictates, under Section 70-a, a defendant may recover "damages, including costs and attorney's fees," by bringing a special motion to dismiss pursuant to CPLR § 3211(g). *See* N.Y. Civ. Rts. L. § 70-a(1). Such a motion "shall be granted" unless the plaintiff demonstrates "that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." CPLR § 3211(g).[3]

While Defendant may argue that 3211(g) is just one option under New York's anti-SLAPP law to obtain fees, that argument still fails. The *Kesner* court grappled with this exact issue. There, the defendant argued dismissal pursuant to CPLR § 3211(g) is just one option. *Kesner*, 590 F. Supp. 3d at 701. The court found that argument "unpersuasive," but held it did not matter either way because "the statute

---

[3] This is exactly the sort of burden-shifting that *Klocke* prohibits.

itself would still embed a less plaintiff-friendly standard than Rule 12 (and Rule 56)." *Id*. The pleading standard under the Federal Rules is "plausibility," while the pleading standard under New York's anti-SLAPP statute is "substantial basis." *Id*. Specifically, a movant is only entitled to fees under New York's anti-SLAPP statute if "the action involving public petition and participation was commenced or continued *without a substantial basis in fact and law*." N.Y. CIV. RTS. L. § 70-a(1)(a) (emphasis added). *See also Nat'l Acad. of Television Arts and Sciences*, 551 F. Supp. 3d at 432 ("New York's anti-SLAPP law imposes a different, and higher, burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure."); *Chinese Americans Civil Rights Coalition, Inc. v. Trump*, No. 21-cv-4548, 2022 WL 1443387, at *4 n.4 (S.D.N.Y. May 6, 2022) (finding that New York's anti-SLAPP law creates a "heightened pleading standard" that "does not apply in federal court.").

One court has even found that New York's anti-SLAPP law conflicts with Rule 11. *See Brady v. NYP Holdings, Inc.*, No. 21-cv-3482, 2022 WL 992631, at *11 (S.D.N.Y. Mar. 31, 2022). "Rule 11 is addressed to 'claims, defenses, and other legal contentions [that] are [not] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Id*. (quoting FED. R. CIV. P. 11). Under the New York anti-SLAPP, however, this "is triggered on a showing that a covered action 'was commenced or continued without a substantial basis in fact and law and could not be supported by a *substantial* argument for the extension, modification or reversal of existing law.'" *Id*. (quoting N.Y. CIV. RTS. L. § 70-a(1)(a)) (emphases added). These standards are substantially

23

similar and effectively the same. Each seeks to prevent frivolous or meritless actions. The main issue here is that a frivolous or meritless action is not the same standard as an action that ultimately is not "plausible." Further, New York's anti-SLAPP law does not afford plaintiffs "the opportunity to withdraw or correct the challenged paper without adverse consequences." *Id.* (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1337.2 (4th ed. 2021)). Under the anti-SLAPP a movant "may seek sanctions without providing any advance notice to the adverse party." *Id.*

Accordingly, Rules 11, 12, and 56 answer the same question as New York's anti-SLAPP law and does so differently. *See La Liberte*, 966 F.3d at 87. New York's anti-SLAPP statute imposes additional requirements that conflict with the federal rules that already answer the same questions regarding pretrial dismissal. And fees under New York's anti-SLAPP statute are inextricably intertwined with the heightened pleading standard. A movant cannot be entitled to fees unless they also satisfy the procedural burden outlined in § 70-a. Therefore, if the procedural provisions of § 70-a do not apply, then neither can the fee-shifting provision.

And to the extent the Court is inclined to apply D.C. law, the law is settled in the D.C. Circuit that D.C.'s anti-SLAPP statute does not apply in federal court. *See Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015). This is because D.C.'s anti-SLAPP statute creates "an additional hurdle a plaintiff must jump over to get to trial" by requiring "a likelihood of success on the merits." *Id.* at 1333–34.

24

Accordingly, regardless of the law this Court applies, Texas, Nevada, New York, or Washington, D.C., none of their anti-SLAPP statutes could apply in this Court under Fifth Circuit precedent in *Klocke*.

## CONCLUSION

As Chief Justice Warren observed, "[f]reedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., concurring). For the foregoing reasons, Defendant's lie is not protected, and Plaintiff, Kashyap Patel, respectfully requests that this Court deny Defendant's motion in its entirety. To the extent the Court were to dismiss Dir. Patel's Complaint, Defendant would not be entitled to fees under Fifth Circuit precedent, and Dir. Patel would seek leave to amend. Dir. Patel requests oral argument on this motion.


Dated: September 26, 2025                    Respectfully submitted,

                                             */s/ Jason C. Greaves*
                                             Jason C. Greaves, TBN 24124953
                                             BINNALL LAW GROUP
                                             717 King Street
                                             Suite 200
                                             Alexandria, VA 22314
                                             (703) 888-1943
                                             Fax: (703) 888-1930
                                             jason@binnall.com

                                             *Attorney for Kashyap Patel*

25

**CERTIFICATE OF SERVICE**

I certify that on September 26, 2025, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

*/s/ Jason C. Greaves*
Jason C. Greaves

*Attorney for Kashyap Patel*