# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

KASHYAP P. PATEL,

     *Plaintiff*

v.

CESARE FRANK FIGLIUZZI, JR.,

     *Defendant*

CIVIL ACTION NO. 4:25-cv-02548

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

    A.    The context and text of Figliuzzi's "nightclub" remark confirm that it is hyperbolic sarcasm and thus fully protected by the First Amendment. .................................................................................... 3

    B.    Director Patel does not defend his deficient actual malice allegations, relying instead on inapposite "failure to investigate" cases. ............................................................................................... 9

    C.    The Court should permit Figliuzzi to apply for recovery of his costs and fees pursuant to substantive New York law. ........................................ 12

    D.    The Court should deny Director Patel's request for leave to amend. ......... 16

CONCLUSION ............................................................................................... 17

CERTIFICATE OF SERVICE ......................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
   774 F.3d 803 (2d Cir. 2014) ................................................................... 15

*Bentley v. Bunton*,
   94 S.W.3d 561 (Tex. 2002) .................................................................... 12

*Bobulinski v. Tarlov*,
   758 F. Supp. 3d 166 (S.D.N.Y. 2024) ............................................ *passim*

*Brown v. Petrolite Corp.*,
   965 F.2d 38 (5th Cir. 1992) ................................................................... 11

*Button v. N.Y. Times Co.*,
   2025 WL 2643674 (S.D.N.Y. Sept. 15, 2025) .................................. 13, 14

*Carson v. Allied News Co.*,
   529 F.2d 206 (7th Cir. 1976) ................................................................. 11

*Celle v. Filipino Reporter Enters. Inc.*,
   209 F.3d 163 (2d Cir. 2000) .................................................................. 11

*Chi v. Loyola Univ. Med. Ctr.*,
   787 F. Supp. 2d 797 (N.D. Ill. 2011) .................................................... 13

*Dall. Morning News, Inc. v. Hall*,
   579 S.W.3d 370 (Tex. 2019) .................................................................... 5

*Edionwe v. Bailey*,
   860 F.3d 287 (5th Cir. 2017) ................................................................. 16

*Green v. City of Mission*,
   2019 WL 3217033 (S.D. Tex. Jul. 17, 2019) ........................................... 6

*Greenbelt Co-op Publ'g Ass'n v. Bresler*,
   398 U.S. 6 (1970) ............................................................................... 3, 4

*Heilbut v. Cassava Scis., Inc.*,
   778 F. Supp. 3d 551 (S.D.N.Y. 2025) .............................................. 13, 16

*Intercon Sols., Inc. v. Basel Action Network*,
  969 F. Supp. 2d 1026 (N.D. Ill. 2013),
  *aff'd*, 791 F.3d 729 (7th Cir. 2015) ............................................................. 13

*Klocke v. Watson*,
  936 F.3d 240 (5th Cir. 2019) ............................................................. 14, 15

*Kovalchuk v. Wilmington Sav. Fund Soc'y*,
  2021 WL 5119705 (5th Cir. Nov. 3, 2021) ................................................ 17

*La Liberte v. Reid*,
  966 F.3d 79 (2d Cir. 2020) ................................................................. 14, 15

*Levine v. CMP Publ'ns, Inc.*,
  738 F.2d 660 (5th Cir. 1984) ............................................................. 11

*Lilith Fund for Reprod. Equity v. Dickson*,
  662 S.W.3d 355 (Tex. 2023) ............................................................. 6

*Lindell v. Mail Media Inc.*,
  575 F. Supp. 3d 479 (S.D.N.Y. 2021) ................................................ 8

*Max v. Lissner*,
  2023 WL 2346365 (S.D.N.Y. Mar. 3, 2023) ...................................... 14

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ............................................................. 2

*National Academy of Television Arts & Science, Inc. v. Multimedia Sys. Design, Inc.*,
  551 F. Supp. 3d 408 (S.D.N.Y. 2021) ................................................ 14

*New Times, Inc. v. Isaacks*,
  146 S.W.3d 144 (Tex. 2004) ............................................................. 5, 7

*Newton v. Nat'l Broad. Co.*,
  930 F.2d 662 (9th Cir. 1990) ............................................................. 11

*O'Gara v. Binkley*,
  384 F. Supp. 3d 674 (N.D. Tex. 2019) .............................................. 12

*Oleniak v. Slaton*,
  2014 WL 2151944 (N.Y. Sup. Ct. May 21, 2014) .............................. 9

*Pring v. Penthouse Int'l, Ltd.*,
  695 F.2d 438 (10th Cir. 1982) ............................................................. 7, 8

*Sharifan v. NeoGenis Labs, Inc.*,
　　622 F. Supp. 3d 478 (S.D. Tex. 2022) ......................................................... 16

*St. Amant v. Thompson*,
　　390 U.S. 727 (1968) ..................................................................................... 11

*Texas Beef Group v. Winfrey*,
　　201 F.3d 680 (5th Cir. 2000) ......................................................................... 5

*Walker v. Beaumont Indep. Sch. Dist.*,
　　938 F.3d 724 (5th Cir. 2019) ......................................................................... 6

*Wang v. Sussman*,
　　2025 WL 2607155 (S.D.N.Y. Sept. 9, 2025) ......................................... 15, 16

*Zerangue v. TSP Newspapers, Inc.*,
　　814 F.2d 1066 (5th Cir. 1987) ..................................................................... 11

**Statutes**

N.Y. C.P.L.R. § 3211 ................................................................................... 13, 14

N.Y. C.P.L.R. § 3212 ................................................................................... 13, 14

N.Y. Civ. Rights Law § 70-a ............................................................ 2, 13, 14, 15

Nev. Rev. Stat. § 47.0670(1)(c) ......................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(6) .............................................................................. 2, 14, 15

Fed. R. Civ. P. 54(d) ................................................................................... 15, 17

## INTRODUCTION

Director Patel fails in his attempt to avoid dismissal of his defamation claim, deflecting from his claim's deficiencies with misstatements of law, gratuitous political attacks, and bizarre musings on the defining features of a "nightclub." But he cannot overcome at least two fundamental problems—either of which independently requires dismissal.

First, Director Patel's claim is based on an unreasonably literal interpretation of Figliuzzi's "nightclub" remark. Neither the remark itself nor the context in which it was made supports such a literal meaning. The reasonable viewer of *Morning Joe* would have understood Figliuzzi's remark as a sarcastic, hyperbolic quip about the media narrative surrounding Patel at the time. Director Patel's hypersensitivity to such criticism notwithstanding, the First Amendment protects rhetorical barbs like Figliuzzi's.

Second, Director Patel's claim fails because he cannot plausibly allege actual malice. Patel does not dispute that his actual malice burden in this case is to show that Figliuzzi intended his remark literally, or at least that Figliuzzi subjectively believed it would be interpreted that way. Yet, Patel's response ignores this standard. He says nothing about the allegations in his complaint, tacitly conceding that they are insufficient under well-established precedent. Instead, he argues that Figliuzzi did not investigate the literal factual basis for his remark, entirely ignoring the threshold question of whether Figliuzzi intended his remark literally.

Director Patel should not be allowed to avoid the fee-shifting consequences under New York law for filing this baseless defamation claim. Patel acknowledges that

Figliuzzi's statement was made in New York, which is the determining factor in the choice of law analysis. Patel argues that section 70-a(1) of New York's Civil Rights Law does not apply in federal court, but this argument has been rejected by recent, well-reasoned decisions—including one in which Patel's counsel lost this same argument while representing a public-figure plaintiff over comments made on a cable news program. *See Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 172-80 (S.D.N.Y. 2024) (awarding fees under § 70-a after dismissing plaintiff's claims under Rule 12(b)(6)). The Court should reach the same result here.

## ARGUMENT

Figliuzzi's motion presents two independent grounds for dismissal. First, Figliuzzi's "nightclub" remark is hyperbolic sarcasm, not an assertion of literal fact, and is thus constitutionally protected. Second, even if the remark's meaning is ambiguous, Director Patel fails to plead actual malice with the requisite plausibility. These are issues of law that can and should be decided under Rule 12(b)(6).

Indeed, it is difficult to imagine a case in which the rigorous application of the plausibility standard is more important than here, where a powerful government official with a record of unsuccessfully suing his critics in the media has targeted a private citizen with a baseless defamation suit. The First Amendment's free speech protections would be illusory if the price of criticizing public officials were the crushing financial burden of civil discovery. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation.").

The Court should dismiss Director Patel's complaint with prejudice and without leave to amend, and it should allow Figliuzzi to recover his costs and attorney's fees.

### A. The context and text of Figliuzzi's "nightclub" remark confirm that it is hyperbolic sarcasm and thus fully protected by the First Amendment.

The threshold question of law for the Court is whether the reasonable viewer of MSNBC's *Morning Joe* on May 2, 2025, would have understood Figliuzzi to be speaking literally or sarcastically when, in response to the host's question about Director Patel's perceived low visibility at FBI headquarters, Figliuzzi quipped: "*Yeah, well, reportedly he has been visible at nightclubs far more than he has been on the seventh floor of the Hoover Building.*" Patel's arguments in support of a literal interpretation of this remark rely on misunderstandings of defamation law and mischaracterizations of the context and actual language of Figliuzzi's remark.

Start with the legal standards that govern the Court's determination of meaning in this case. Recognizing the constitutional protection for rhetorical hyperbole, Director Patel argues that it applies only to "*exaggerations rather than total fabrications*." (Dkt. 29 at 10) (emphasis added). But none of the cases he cites supports this distinction. Nor would this distinction make sense, including in this case.

Rhetorical hyperbole cases inevitably involve claims by the plaintiff that the defendant's statement should be interpreted literally and that, as such, it is a fabrication. For example, in the Supreme Court's seminal rhetorical hyperbole case, *Greenbelt Cooperative Publishing Association, Inc. v. Bresler*, the plaintiff claimed that defendants had made "knowing use of falsehood" (*i.e.*, had engaged in fabrication) when they imputed

the crime of "blackmail" to him. 398 U.S. 6, 13 (1970). The Court held that the statement would not be understood literally, but as hyperbolic commentary on the plaintiff's negotiation tactics. *Id*. Thus, *Greenbelt*'s teaching is that hyperbole is constitutionally protected not because it is an *exaggeration*, but because its meaning is not *literal*.

Director Patel's own claim illustrates why an "exaggeration vs. fabrication" distinction does not work. The sarcasm in Figliuzzi's remark is itself an exaggeration—an obvious overstatement of how often Director Patel was reported to be partying as compared to working. Even Figliuzzi's use of the term "*nightclubs*" is an exaggeration, given the public reporting of Patel's attendance at high-visibility sporting events across the country, his membership in a trendy Las Vegas evening lounge, his participation in the Washington, D.C. party scene, and his enjoyment of the "bachelor" lifestyle with his 26-year-old country music singer girlfriend. (Dkt. 25 at 13-16). In short, the distance between the media narrative and Figliuzzi's remark falls squarely in the realm of hyperbolic exaggeration.

Patel also gets defamation law wrong when he states that the "determination [of meaning] turns on whether the statement can be objectively verified." (Dkt. 29 at 10). Not exactly, at least not in this case. It is true that the "opinion" doctrine in defamation law protects statements that are not objectively verifiable. For example, suppose Director Patel were to sue Michael Che for this "NOT AT WORK ENOUGH" reference:



(Dkt. 25 at 17; Dkt. 25-1 at 10.) The claim would fail, in large part because "NOT AT WORK ENOUGH" is too infused with subjectivity to be objectively verifiable. But that's not why Patel's claim fails here. Figliuzzi's remark is protected under a different strand of the opinion doctrine.[1] Rhetorical hyperbole is objectively verifiable if (mis)understood literally, but it is not actionable because its true meaning is not literal. Thus, the threshold question of meaning in this case remains whether the reasonable viewer would have understood Figliuzzi's remark as asserting a literal fact or as sarcastic hyperbole. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 155 (Tex. 2004).[2]

As Figliuzzi's motion demonstrates, answering this threshold question of law requires careful consideration of context and text. (Dkt. 25 at 13-14) (citing cases). Director Patel's analysis of both is deficient. As to context, Patel argues that the Court cannot consider *the truth* of press reports and other judicially noticeable facts cited in Figliuzzi's motion because they are "outside the complaint." (Dkt. 29 at 13). But Figliuzzi is not relying on *the truth* of these reports. Instead, he is relying on them solely to show the context in which his remark was made (*i.e.*, what was being reported in the media) to aid

---

[1] Director Patel also gets the law wrong when he cites *Texas Beef Group v. Winfrey* for the proposition that opinion is protected if based on established facts. 201 F.3d 680, 688 (5th Cir. 2000) (per curiam). To the extent that doctrine has any application here, the "established facts" are the media narrative surrounding Director Patel at the time, which was the basis for Figliuzzi's sarcastic comment. (Dkt. 25 at 12-18).

[2] Director Patel repeatedly frames the question as whether "*a* reasonable viewer *could*" understand the remark literally. (Dkt. 29 at 9, 14, 17) (emphasis added). That isn't the correct standard. The question is not whether some readers might misunderstand; they inevitably do. *Isaacks*, 146 S.W.3d at 156-57. Rather, the correct question "is *would* an objective reader draw the meaning, not *could*." *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 n.3 (Tex. 2019) (emphasis added).

---

the Court in its "elementary determination of whether a claim has been stated." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). Even Patel concedes that this is proper. (Dkt. 29 at 13) (citing *Green v. City of Mission*, 2019 WL 3217033, at *3 (S.D. Tex. Jul. 17, 2019) ("[A] court may take judicial notice of newspaper articles to demonstrate that certain facts were generally known . . . but not the truth of the facts reported in the newspaper article.")); *cf. Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363 (Tex. 2023) (noting that the reasonable reader is "aware of relevant contemporary events" and "equipped with the national, historical, and temporal context" necessary to determine the meaning of a challenged statement).

Properly considered, these reports provide context for Figliuzzi's quip about Director Patel's "reported" visibility during the administration's first 100 days. Patel asserts that these reports are merely about "public appearances at sporting events and concerts," (Dkt. 29 at 12), but that's not accurate. For example, like other press reports, the *New York Times*'s April 20, 2025 article headlined "A Different Type of F.B.I. Chief: Jet-Setting Patel Loves the Limelight" expressly referred to Patel's Poodle Room membership, the fondness for "clubs" that he shares with J. Edgar Hoover, and his "bachelor" life as the boyfriend of a 26-year-old country music singer. (Dkt. 25 at 16). An earlier article in the *Wall Street Journal* noted his plan to "spend a lot of time in Las Vegas" and his decision to break with longstanding tradition by participating in the Washington, D.C. party scene. (Dkt. 25 at 14). These reports elucidate Figliuzzi's comment, providing the context necessary to see how the reasonable viewer of *Morning Joe* would understand his sarcasm.

This type of remark—a sarcastic quip about the media narrative surrounding a controversial public official—is common across the spectrum of cable news, including on Fox News and MSNBC. Other courts have recognized this, as Figliuzzi's motion notes. (Dkt. 25 at 22) (citing cases). Patel ignores these cases, stating only that Figliuzzi's statement did not appear in *Hustler* (which Patel describes as a "humor magazine" (Dkt. 29 at 14)) or on *Saturday Night Live*. (Dkt. 29 at 15). Of course, today's media landscape is far more nuanced—and the reasonable viewer is far more sophisticated—than Director Patel admits. *Morning Joe* viewers expect some barbed commentary with their news, especially from the show's commentators, and they know that sarcasm is not confined to parody magazines and comedy television shows. Nor do they need the type of "label" or "*not to be taken seriously*" "disclaimer" that Patel proposes. (Dkt. 14 at 4). As courts have long recognized, the reasonable viewer "is no dullard" and is perfectly able to "tell the difference between satire and sincerity" without need for labels or disclaimers. *Isaacks*, 146 S.W.3d at 157, 160 (citation omitted); *Pring v. Penthouse Int'l, Ltd.*, 695 F.2d 438, 442 (10th Cir. 1982) ("The test is not whether the story is or is not characterized as 'fiction,' 'humor,' or anything else in the publication" but whether story could reasonably be interpreted as stating actual fact). In short, the reasonable viewer knows perfectly well what and who to take seriously.

Director Patel fares no better with his textual analysis. Figliuzzi's remark began with a colloquialism—"*yeah, well*"—which is obviously not a sign that he was about to break hard news. Patel says nothing about the significance of "*yeah, well*." Instead, he asserts without any textual support that the reasonable viewer would have understood

Figliuzzi to be claiming that he received information from sources inside the FBI (and, presumably, also the "nightclubs") who had disclosed Patel's whereabouts.[3] (Dkt. 29 at 1). Figliuzzi made no such claim. Moreover, if this were really the reporting of a hard news story, it would have generated much more than a fleeting one-sentence remark. Patel doesn't grapple at all with this problem. And he has abandoned his previous references to the inherent improbability of Figliuzzi's remark, likely because he now sees that such impossibility is among the clearest indicia of satire. *Pring*, 695 F.2d at 443 ("The incidents charged were impossible.").

Finally, Director Patel cannot save his claim by arguing that the defamatory sting of Figliuzzi's remark was not its "proportionality aspect"—that Patel was spending "*far more*" time in nightclubs than in the Hoover Building—but that Patel had spent *any time at all* in a nightclub. This is not a coherent legal theory, for many reasons—and especially for Patel. First and foremost, it is not defamatory to say that someone has been to a nightclub. Patel rattles off a bizarre list of supposed "nightclub" features—"profligate bottle service," "obscene-hour partying," "casual sexual encounters," "drug and alcohol abuse," and "sleazy suggestions of neon"—but most of these are also not defamatory. *See, e.g.*, *Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 487 (S.D.N.Y. 2021) (not defamatory to say plaintiff purchased alcohol on a date because "the purchase of alcohol is a legal and

---

[3] This argument by Director Patel is also based on a mischaracterization of Figliuzzi's remark, which was expressly about Patel's *visibility*, not the relative number of minutes he was logging inside FBI headquarters.

ordinary act"); *Oleniak v. Slaton*, 2014 WL 2151944, at *12-13 (N.Y. Sup. Ct. May 21, 2014) (not defamatory to describe plaintiff as a "player").

More importantly, Figliuzzi's quip says nothing of any of this. It certainly does not accuse the Director of abusing drugs and alcohol or engaging in any immoral, much less illegal, conduct. And even if the Court were to credit Patel's insistence that a "nightclub" "*bears no resemblance*" to the Poodle Room—a penthouse club open only at night (until 2 a.m. on the weekends), which describes itself as a "lounge," sells alcohol, and has a "velvet rope" to regulate access[4]—it would not come close to supporting a viable and coherent theory of defamation. (Dkt. 29 at 13).

In sum, Director Patel may not appreciate the sarcasm of Figliuzzi's "nightclub" remark. He may believe it is not a good look for him that cable news commentators are joking on air about the partying and social exploits of a "middle-aged, professional man" who is serving as the FBI Director. (Dkt. 29 at 11). But that does not give him a viable defamation claim. Figliuzzi's remark is not actionable because it would not be understood literally by the reasonable viewer. The Court need go no further to dismiss Patel's claim on this standalone basis.

### B.     Director Patel does not defend his deficient actual malice allegations, relying instead on inapposite "failure to investigate" cases.

Even if the substance of Figliuzzi's remark were actionable, there is no plausible allegation that he spoke with actual malice. Director Patel does not dispute that—as a

---

[4] https://www.fontainebleaulasvegas.com/poodle-room/.

public official and public figure[5]—he must plead actual malice. (Dkt. 29 at 18). Thus, on this motion, the question is whether the factual allegations in his complaint plead this element with the requisite plausibility. (Dkt. 25 at 24) (citing cases). Figliuzzi's motion carefully analyzed Patel's allegations, categorizing them and citing extensive authority demonstrating that they are insufficient as a matter of law. (*Id.* at 26-28).

How does Director Patel respond? He doesn't. He does not address any of Figliuzzi's cited cases.  Moreover, he refers to the allegations in his complaint only once—in a short, single sentence that merely repeats without any additional discussion the allegations that Figliuzzi's motion shows to be deficient. (Dkt. 29 at 20). Patel spends more time crudely attacking MSNBC ("Democrat commentators, like those that work for *Morning Joe*" (Dkt. 29 at 17)) and engaging in self-affirmation (congratulating himself for being "surprisingly cautious" (*Id.*)) than defending his actual malice allegations. And while Patel continues to attack Figliuzzi, those attacks range from the conclusory ("Defendant chose to fabricate the story" and "deliberately lied") to the tautological ("Defendant was aware of what he knew and what he did not."). (Dkt. 29 at 22-23). Even if Patel could rely on them, they do not come close to satisfying his burden.

Director Patel's reliance on "failure to investigate" cases cannot save his claim. Those cases have no application here, where there is a threshold question of meaning. Figliuzzi would have no reason to investigate, in advance, an off-the-cuff, sarcastic quip

---

[5] Patel refers to himself as a "public figure," citing *New York Times*. (Dkt. 29 at 18). Because Director Patel is a public official under *New York Times*, the Court need not address his status as a public figure.

about a media narrative.[6]   In this context, actual malice requires Patel to plead facts plausibly showing that Figliuzzi *intended* his remark to be understood literally or was at least *subjectively aware* that the reasonable viewer would interpret his remarks literally. (Dkt. 25 at 25 (citing, among others, *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir. 1990)). Patel does not dispute that this standard applies, but he does nothing to address it.

None of Patel's cited cases support his argument in any way. None of them involves sarcastic or off-the-cuff comments or a threshold question of intended meaning. *See, e.g.*, *Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070-71 (5th Cir. 1987) (investigative newspaper article about deputies' supposed convictions for stolen goods, rather than for malfeasance); *St. Amant v. Thompson*, 390 U.S. 727, 729-33 (1968) (no actual malice in case involving prepared statements in televised speech about bribery and criminal conduct); *Levine v. CMP Publ'ns, Inc.*, 738 F.2d 660, 673-75 (5th Cir. 1984) (statements in written article mischaracterizing civil suit as theft conviction); *Brown v. Petrolite Corp.*, 965 F.2d 38, 42-43 (5th Cir. 1992) (technical scientific reports claiming competitor's products were harmful and did not work, when those products were untested); *Carson v. Allied News Co.*, 529 F.2d 206, 212 (7th Cir. 1976) (written article claiming television show relocated so host could be near woman who would become his second wife); *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 186-87 (2d Cir. 2000) (claim arising out of

---

[6] In fact, Patel's insistence that Figliuzzi spoke before he investigated undermines any inference of actual malice because it shows that Figliuzzi did not deliberately set out to convey literal facts he knew to be false.

multiple news articles); *see also Bentley v. Bunton*, 94 S.W.3d 561, 596-602 (Tex. 2002) (in case involving multiple television reports, actual malice finding supported in part on evidence of speaker telling friend he doubted there was any basis for his accusations).

In sum, Director Patel does not come close to pleading actual malice, and his complaint should be dismissed for this independent reason, even if the Court were to find ambiguity in the meaning of Figliuzzi's "nightclub" remark.

### C.    The Court should permit Figliuzzi to apply for recovery of his costs and fees pursuant to substantive New York law.

After devoting barely more than three pages to actual malice, Director Patel spends ten pages attempting to avoid the fee-shifting consequences of having brought a baseless defamation claim against Figliuzzi. (Dkt. 29 at 21-31). He fails.

First, Director Patel gets the choice of law analysis wrong, arguing that Texas law governs the issue of whether Figliuzzi can recover costs and attorney's fees. Yet, his own authority—the *only* case that he cites—supports application of New York law to this issue. Director Patel relies entirely on *O'Gara v. Binkley*, 384 F. Supp. 3d 674 (N.D. Tex. 2019). In *O'Gara*, the court recognized that th elaw of California, which was the state of plaintiff's domicile, governed *the defamation claim*. *Id.* at 682. But the court also recognized that the separate question of which state's law governed *the anti-SLAPP issue* properly focused on the defendant. *O'Gara*, 384 F. Supp. 3d at 682. There, it was unclear where the speech was made, so the court looked to the defendant's residence. *Id.* Here, there is no uncertainty. Patel expressly states that "[t]he place where Defendant made his defamatory comments was New York." (Dkt. 29 at 22). He further acknowledges that "the parties do not have any

relationship beyond this case." (*Id.*). In these circumstances, the primary focus of the anti-SLAPP choice-of-law analysis shifts to the state from which the speech emanated:

> The purpose behind an anti-SLAPP law is to encourage the exercise of free speech …. In light of this policy goal, the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue. A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, *at least when, as in this case, the speech initiated within the state's borders*.

*Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 803 (N.D. Ill. 2011) (emphasis added); *see also Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1035 (N.D. Ill. 2013) (same), *aff'd*, 791 F.3d 729 (7th Cir. 2015). Based on these considerations, New York law governs the issue of whether Figliuzzi's costs and fees are recoverable.

That determination leads to a final question: *Does the fees-recovery right set forth in New York Civil Rights Law § 70-a(1) apply in federal court?* Based on analysis that is fully consistent with Fifth Circuit precedent, federal district courts in New York have recently and repeatedly said "yes." *See, e.g.*, *Bobulinski*, 758 F. Supp. 3d at 172-80; *Heilbut v. Cassava Scis., Inc.*, 778 F. Supp. 3d 551, 566-69 (S.D.N.Y. 2025). And just last month, yet another court endorsed the "well-reasoned" analysis of *Bobulinski* and *Heilbut*. *See Button v. N.Y. Times Co.*, 2025 WL 2643674, at *20-21 (S.D.N.Y. Sept. 15, 2025) ("agree[ing] with *Bobulinski* and *Heilbut*").

These courts recognize that New York law features both a *burden*-shifting procedure for the efficient dismissal of baseless defamation claims in state court (N.Y. CPLR 3211, 3212) and a separate *fee*-shifting provision that gives defendants a substantive claim "to recover damages, including costs and attorney's fees" to the extent they have

been the target of a baseless claim like this one (N.Y. CIV. RIGHTS LAW § 70-a(1)). In federal court, the *dismissal* procedures of the CPLR yield to Federal Rule of Civil Procedure 12(b)(6), but the *fees* provision of New York Civil Rights Law § 70-a is considered substantive under *Erie* and thus applies in federal court. As *Bobulinski* explains, a federal court can rely on Rule 12(b)(6) to dismiss the plaintiff's claim, then permit the defendant to move for fees recoverable under § 70-a(1) without raising any *Erie* concerns. 758 F. Supp. 3d at 183. Patel does not address *Bobulinski*'s analysis (or the identical holdings in *Heilbut* or *Button*), even though his counsel represented the plaintiff in that case. In other words, Director Patel's counsel made the same *Erie* argument in *Bobulinski* that Patel makes here, and Judge Oetken rejected it.[7] And, over the past year, subsequent cases have repeatedly confirmed that Judge Oetken was right.[8]

Finally, Judge Oetken's analysis in *Bobulinski* is entirely consistent with the Fifth Circuit's decision in *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019). *Bobulinski* applied *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), in which the Second Circuit

---

[7] The majority of the cases on which Patel relies involved the dismissal provisions of CPLR 3211 and 3212, which are not at issue here. (Dkt. 29 at 20-21).

[8] Director Patel relies heavily on Judge Caproni's 2022 decision in *National Academy of Television Arts & Science, Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021). (Dkt. 29 at 20-21). Judge Caproni's analysis in that case focused primarily on the dismissal provisions of CPLR 3211, 3212. *Id.* But *National Academy* is not the Southern District of New York's last word on the issue, as *Bobulinski* and other more recent decision make clear. Indeed, *National Academy* is not even Judge Caproni's last word. In 2023, she clarified that *National Academy* "do[es] not stand for the proposition that the federal courts cannot entertain a claim that a defamation plaintiff violated the substantive state law by commencing a [baseless] defamation lawsuit[.]" *Max v. Lissner*, 2023 WL 2346365, at *8 (S.D.N.Y. Mar. 3, 2023). Director Patel does not even acknowledge *Max*.

---

endorsed *Klocke*'s analysis. *Id.* at 86-87. In doing so, the Second Circuit rejected the application of California's anti-SLAPP law in federal court, just as *Klocke* had rejected application of Texas's law. *Id.* But *La Liberte* expressly distinguished the Second Circuit's prior holding in *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014), in which the court held that application of Nevada's *fee*-shifting law was "unproblematic" under *Erie*. *La Liberte*, 966 F.3d at 86 n.3. The reason? The Second Circuit recognized that Nevada's law was "quite different" from California law (and, by extension, Texas's law). *Id.*; NEV. REV. STAT. § 47.0670(1)(c) (providing victim of SLAPP suit a substantive claim for recovery of fees, including through "separate action"). And New York's law is further distinct from California's and Texas's. Like Nevada, New York permits a substantive, stand-alone action to recover fees, and it codifies that right in the Civil Rights Law, not in the state civil procedure code. N.Y. CIV. RIGHTS LAW § 70-a(1).

For these reasons, the Court should join *Bobulinski* and other recent well-reasoned decisions in rejecting Director Patel's *Erie* argument. The Court should allow Figliuzzi to file a motion under Rule 54(d) for the costs and attorney's fees that he is substantively entitled to recover under N.Y. CIV. RIGHTS LAW § 70-a(1).[9]

---

[9] Director Patel cites a recent, outlier decision in support of his argument that § 70-a(1) does not permit recovery of fees *through a motion after a federal court dismissal under Rule 12(b)(6)*. *See Wang v. Sussman*, 2025 WL 2607155, at *6 (S.D.N.Y. Sept. 9, 2025). No other federal court decisions reach the same conclusion and several, including *Bobulinski*, reject that conclusion. *Bobulinski*, 758 F. Supp. 3d at 189 n.23. *Wang*'s interpretation of § 70-a(1) is erroneous. The statutory language makes clear that prevailing under New York's anti-SLAPP dismissal provisions in the CPLR is merely one way of showing that the action was "commenced without a substantial basis in fact and law[.]" N.Y. CIV. RIGHTS LAW § 70-a(1) (using the term "including"). In any event, as *Wang* makes clear, even if the Court were to conclude that Figliuzzi cannot recover fees through

### D.    The Court should deny Director Patel's request for leave to amend.

Director Patel concludes his response with a cursory request for leave to amend "to the extent the Court were to dismiss [his] Complaint." (Dkt. 29 at 31). His counsel made the same cursory request in *Bobulinski*, and Judge Oetken denied it. 758 F. Supp. 3d at 190. As Judge Oetken noted, the request for leave was not accompanied by any showing that the defamatory meaning and actual malice deficiencies could be remedied by repleading. *Id.* The Court should deny leave for the same reasons. An amendment cannot change what Figliuzzi said, nor can it make the remark actionable. As to actual malice, Director Patel has been shown repeatedly—including in Figliuzzi's pre-motion conference letter and in the motion itself—that the complaint's allegations are deficient. (Dkt. 14 at 3; Dkt. 25 at 24-29). Still, he has given no indication that he has any additional facts to allege or that amendment would be anything other than futile.

This Court and the Fifth Circuit have consistently denied plaintiffs' similar last-ditch requests for leave to amend on the same grounds. *See Sharifan v. NeoGenis Labs, Inc.*, 622 F. Supp. 3d 478, 494 (S.D. Tex. 2022) (Hanks, J.) (denying leave to amend where plaintiff was apprised during pre-motion conference of deficiencies and did not specify the new facts that would save his claim from dismissal); *see also Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (affirming denial of leave to amend where plaintiff's request "merely stated that '[i]f the Court is inclined to dismiss any portion of Plaintiff's complaint for failure to state a claim, Plaintiff requests leave of court to amend his complaint to cure

---

a *motion in this case*, he would be free to file a "follow-on case seeking fees." 2025 WL 2607155, at *6 (citing *Heilbut*, 778 F. Supp. 3d at 567-69).

the alleged pleading deficiencies identified by Defendants'"); *Kovalchuk v. Wilmington Sav. Fund Soc'y*, 2021 WL 5119705, at *2 (5th Cir. Nov. 3, 2021) (same, collecting similar cases).

For these reasons, the Court should deny Director Patel's request for leave to amend and put an end to this abusive misuse of defamation law to chill criticism of a public official.

## CONCLUSION

The Court should dismiss Director Patel's claim with prejudice and award Figliuzzi costs and reasonable attorney's fees, to be proven by separate application. FED. R. CIV. P. 54(d).

Respectfully submitted,

*/s/ Marc A. Fuller*

Marc A. Fuller
Attorney-in-Charge
Texas State Bar No. 24032210
S.D. Tex. Bar No. 2035080
mfuller@jw.com
Maggie I. Burreson
Texas State Bar No. 24116150
S.D. Tex. Bar No. 3689815
mburreson@jw.com
Abigail A. Lahvis
Texas State Bar No. 24138136
S.D. Tex. Bar No. 3901286
alahvis@jw.com
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-5793
Facsimile:  (214) 953-5822

N. Scott Fletcher
Texas State Bar No. 00789046
S.D. Tex. Bar No. 16546
Kenneth P. Held
Texas State Bar No. 24030333
S.D. Tex. Bar No. 29197
FLETCHER HELD, PLLC
808 Travis Street, Suite 1553
Houston, Texas 77002
Phone : 713.255.0414
Fax : 713.255.0419
sfletcher@fletcherheld.com

Thomas S. Leatherbury
Texas State Bar No. 12095275
S.D. Tex. Bar No. No. 19358
tom@tsleatherburylaw.com
Thomas S. Leatherbury Law, PLLC
Cumberland Hill School Building
1901 N. Akard St.
Dallas, TX 75201
Phone: (214) 213-5004

Peter B. Steffensen
Texas State Bar No. 24106464
S.D. Tex. Bar No. 3372006
psteffensen@smu.edu
SMU Dedman School of Law
First Amendment Clinic
P.O. Box 750116
Dallas, TX 75275
Phone: (214) 768-4077

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that service of a true and correct copy of the above and foregoing document will be accomplished through the notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 3rd day of October, 2025, to the following:

Jason C. Greaves, Esq.
Jesse R Binnall, Esq.
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, VA  22314
Telephone: (703) 888-1943
Facsimile:  (703) 888-1930
jason@binnall.com
jesse@binnall.com
*Counsel for Plaintiff Kashyap P. Patel*

*/s/ Marc A. Fuller*
Marc A. Fuller