UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KASHYAP P. PATEL,<br><br>*Plaintiff*<br><br>v.<br><br>CESARE FRANK FIGLIUZZI, JR.,<br><br>*Defendant* | CIVIL ACTION NO. 4:25-cv-02548 |

**DEFENDANT'S MOTION TO STAY DISCOVERY**

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE PROCEEDING ........................................................... 1

STATEMENT OF THE ISSUE ........................................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................................. 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    A.    Figliuzzi's motion to dismiss is based on strong legal grounds that would result in dismissal of the entire case. ............................... 5

    B.    Director Patel's broad and intrusive requests invade protected newsgathering and would risk exposing nonparties to retribution. ...................................................................................................... 7

    C.    A stay will leave ample time for both sides to conduct discovery and will avoid unnecessary motion practice over discovery relevant to Director Patel's daily whereabouts and activities. ..................................................................................................... 10

CONCLUSION .................................................................................................................... 13

CERTIFICATE OF CONFERENCE ................................................................................. 15

CERTIFICATE OF SERVICE ........................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 6

*Bickford v. Boerne Indep. Sch. Dist.*,
   2016 WL 1430063 (W.D. Tex. Apr. 8, 2016) ......................................................................... 4

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ............................................................................................................................... 5

*Dallas Morning News Co. v. Garcia*,
   822 S.W.2d 675 (Tex. App.—San Antonio 1991, no writ) ..................................................... 8

*Dallas Morning News, Inc. v. Tatum*,
   554 S.W.3d 614 (Tex. 2018) ................................................................................................. 10

*Dobrovolskaya v. Monarch Air Group, LLC*,
   2025 WL 733258 (S.D.N.Y. Mar. 7, 2025) ............................................................................. 8

*Favre v. Sharpe*,
   117 F.4th 342 (5th Cir. 2024) .................................................................................................. 5

*Ferrari v. Forbes Media LLC*,
   2025 WL 860064 (D. Del. Mar. 19, 2025) ........................................................................... 4, 6

*Fujita v. United States*,
   416 F. App'x 400 (5th Cir. 2011) ........................................................................................... 4

*KBMT Operating Co. v. Toledo*,
   492 S.W.3d 710 (Tex. 2016) ................................................................................................. 10

*Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*,
   901 F.2d 404 (5th Cir. 1990) ................................................................................................... 4

*Lively v. Wayfarer Studios LLC*,
   2025 WL 698287 (S.D.N.Y. Mar. 4, 2025) ......................................................................... 4, 8

*MC Asset Recovery, LLC v. Castex Energy, Inc.*,
   2007 WL 9718311 (N.D. Tex. Aug. 6, 2007) ......................................................................... 6

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ............................................................................................... 5

*Polk Cnty. Pub. Co. v. Coleman*,
    685 S.W.3d 71 (Tex. 2024) ............................................................................................ 10, 11

*Psychic Readers Network, Inc. v. A&E Television Networks LLC*,
    2025 WL 1380956 (S.D.N.Y. May 13, 2025) ....................................................................... 7

*Smith v. Potter*,
    400 F. App'x 806 (5th Cir. 2010) .......................................................................................... 5

*Sneed v. Abbot*,
    2021 WL 2877239 (M.D. La. Jun. 29, 2021) ........................................................................ 6

*Spadafora v. Hotel Reservation Serv., Inc.*,
    2023 WL 11762558 (E.D. Tex. Dec. 29, 2023) ............................................................ 4, 6, 7

*Von Drake v. National Broadcasting Co.*,
    2004 WL 1144142 (N.D. Tex. May 20, 2004) ................................................................... 4, 6

## Statutes

FED. R. EVID. 501 ............................................................................................................................ 8

NEV. REV. STAT. ANN. § 49.275 ..................................................................................................... 8

TEX. CIV. PRAC. & REM. CODE § 22.024 ....................................................................................... 8

## Rules

FED. R. CIV. P. 12(b)(6) ........................................................................................................ *passim*

FED. R. CIV. P. 26(c)(1) .................................................................................................................. 4

## Other

Adam Goldman, *The F.B.I. Is Using Polygraphs to Test Officials' Loyalty*,
    THE NEW YORK TIMES (Jul. 10, 2025) ................................................................................. 9

Ben Penn, *FBI Ousts Leader as Patel Fumes Over Attention to Agency Jet
    Use*, BLOOMBERG LAW (Nov. 1, 2025) ................................................................................ 9

Carrie Johnson, *Fired FBI agents allege retribution, incompetence at top security agency*, NPR (Sept. 10, 2025) .......................................................................... 9

Ken Dilanian and Carol Leonnig, *Kash Patel's girlfriend being protected by FBI SWAT agents as security perk*, MS NOW (Nov. 17, 2025) ............................. 13

Ryan J. Reilly, Michael Kosnar and David Rohde, *FBI Director Kash Patel criticized for his actions and posts during Charlie Kirk shooting investigation: The FBI leader's decisions to dine at an exclusive restaurant hours after the assassination and to criticize Utah officials raise questions about his leadership, current and former officials say*, NBC News (Sept. 14, 2025) ................................................................................... 12

47651045v.2

## NATURE AND STAGE OF THE PROCEEDING

This is a defamation case filed by Kashyap P. Patel ("Director Patel"), the Director of the FBI, against former FBI agent and television commentator Cesare Frank Figliuzzi, Jr. ("Figliuzzi"). The claim arises from a sarcastic remark made by Figliuzzi on a live cable news program on MSNBC on May 2, 2025. Figliuzzi has moved to dismiss Director Patel's claim under FED. R. CIV. P. 12(b)(6). (Dkt. 25). That motion is fully briefed.

The parties have exchanged initial disclosures, but Figliuzzi has not sought any discovery from Director Patel while the motion to dismiss has been pending. On October 31, Director Patel served written discovery requests.

## STATEMENT OF THE ISSUE

Should the Court stay discovery until it resolves Figliuzzi's motion to dismiss?

## SUMMARY OF THE ARGUMENT

The Director of the FBI has filed a baseless defamation claim against one of his staunchest critics in the media and now seeks to use the discovery process to investigate everything that critic has said about him—publicly, privately, and confidentially. Director Patel's recently served discovery asks for every communication Figliuzzi has made about him *for almost two years*. As to Figliuzzi's communications with anyone at MSNBC or the FBI, Director Patel demands *five years* of communications. These requests come as news reports and whistleblower lawsuits document the campaign of retribution that Director Patel has waged against his perceived personal and political enemies. To protect Figliuzzi, nonparty journalists, and current and former FBI agents who will be dragged into this

dispute if discovery moves forward, the Court should stay discovery until it makes the threshold determination of whether Director Patel has pleaded a viable claim.

Good cause supports a stay. Figliuzzi's motion to dismiss rests on strong legal grounds. His "nightclub" remark—a sarcastic quip alluding to public news reports about Director Patel's high-visibility socializing and membership in a Las Vegas evening lounge—is constitutionally protected. None of Director Patel's requested discovery could have any potential impact on this issue, which the Court can and should decide as a matter of law. Even if Director Patel's claim could overcome this threshold issue, he does not come close to meeting his burden to plead actual malice with plausibility. If the Court agrees with either of these arguments, Director Patel's suit will be dismissed in its entirety, and the case will be over.

Without a stay, the parties will embark on a fraught discovery process that will inevitably generate complicated disputes requiring the Court's intervention. Director Patel's discovery requests are extraordinarily broad, burdensome, and invasive—and they will raise difficult issues involving the reporter's privilege under the First Amendment and state law. If discovery proceeds, Director Patel's claim and alleged reputational damage will put at issue topics such as his daily and nightly whereabouts and activities, which will require the parties and the Court to navigate sensitive questions of national and personal security. And because many of the relevant witnesses are current and former FBI agents, discovery will expose them and others to retribution by Director Patel.

Finally, a stay will not prejudice Director Patel. Even if the Court denied Figliuzzi's motion to dismiss, ample time would remain for the parties to conduct full discovery. The

discovery cutoff is not until September 2026, and trial is not scheduled to begin until March or April 2027.

## BACKGROUND

Director Patel sued Figliuzzi on June 2, 2025. (Dkt. 1). His complaint asserts a single claim for defamation, based solely on Figliuzzi's sarcastic "nightclub" remark. (*Id.* ¶ 23). On September 5, Figliuzzi moved to dismiss the complaint in its entirety under Rule 12(b)(6). (Dkt. 25). The motion argues that Figliuzzi's comment is constitutionally protected hyperbole and that, even if it were interpreted literally, Director Patel has failed to plead actual malice with the requisite plausibility. (*Id.*)

During the Rule 26(f) conference, counsel for the parties disagreed on whether discovery (other than initial disclosures) should be stayed pending the Court's resolution of the motion to dismiss. (Dkt. 26 at 4-7). At the initial scheduling conference, Magistrate Judge Bray declined to decide this issue, advising that Figliuzzi should file a motion to stay if such relief became necessary.

On October 31, Patel served his first set of written discovery requests, including requests for production and interrogatories.[1] On November 14, the Court allowed Figliuzzi to file a motion for a stay of discovery pending the Court's decision on the motion to dismiss. (Dkt. 32).

---

[1] These requests are attached to this motion as Exs. A (RFPs) and B (Interrogatories).

## ARGUMENT

A federal district court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Spadafora v. Hotel Reservation Serv., Inc.*, 2023 WL 11762558, at *1 (E.D. Tex. Dec. 29, 2023) (quoting *Fujita v. United States*, 416 F. App'x 400, 402 (5th Cir. 2011)). An order staying discovery must be based on "good cause." *Von Drake v. National Broadcasting Co.*, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004) (citing FED. R. CIV. P. 26(c)(1)). Good cause exists where the granting of a motion to dismiss "might preclude the need for discovery altogether[,] thus saving time and expense." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990). Among the factors that inform the court's discretion are: "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake*, 2004 WL 1144142, at *1. In essence, the court should "balance the harm produced by the delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *Bickford v. Boerne Indep. Sch. Dist.*, 2016 WL 1430063, at *1 (W.D. Tex. Apr. 8, 2016).

In defamation cases, staying discovery pending decision on a Rule 12(b)(6) motion is often necessary to protect the defendant's First Amendment rights. *See, e.g., Ferrari v. Forbes Media LLC*, 2025 WL 860064, at *3 (D. Del. Mar. 19, 2025) (granting stay in defamation case pending resolution of motion to dismiss); *Lively v. Wayfarer Studios LLC*, 2025 WL 698287, at *1-2 (S.D.N.Y. Mar. 4, 2025) (same); *Von Drake*, 2004 WL 1144142, at *2 (same). In such cases, "Rule 12(b)(6) not only protects against the costs of meritless

litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[T]he plausibility pleading standard makes particular sense when examining public figure defamation suits. In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation."). Without a stay of discovery, the protections of the First Amendment and Rule 12(b)(6) would be hollow, as a public official could use a facially baseless defamation claim to punish protected speech by conducting costly and invasive discovery before the court dismisses the case.

> **A. Figliuzzi's motion to dismiss is based on strong legal grounds that would result in dismissal of the entire case.**

A stay here is justified by the substance and strength of Figliuzzi's motion. Figliuzzi makes two arguments in support of dismissal under Rule 12(b)(6). The first is that a reasonable viewer would not have interpreted Figliuzzi's "nightclub" remark to be asserting *as literal fact* that Director Patel spends more time in nightclubs than at his job. (Dkt. 25 at 19-24). This argument presents a threshold question of meaning that should be decided by the Court as a matter of law at the pleadings stage. *See, e.g.*, *Favre v. Sharpe*, 117 F.4th 342, 346-47 (5th Cir. 2024) (affirming Rule 12(b)(6) dismissal of defamation claim on opinion grounds, after district court dismissed on rhetorical hyperbole grounds). None of the discovery that Director Patel seeks could have any conceivable bearing on this issue. *See Smith v. Potter*, 400 F. App'x 806, 813 (5th Cir. 2010) (affirming district court's

decision to stay discovery when pending motion to dismiss addresses issues "largely legal rather than factual in nature").

In addition, Figliuzzi argues that Director Patel has failed to allege actual malice with the requisite plausibility, which is a classic question of pleading sufficiency properly decided at the Rule 12(b)(6) stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because [plaintiff's] complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). Extensive case law supports this argument, including precedent dismissing defamation claims by Patel for precisely this reason. (Dkt. 25 at 24-29).

To stay discovery, the Court need not finally resolve these issues or predetermine their final resolution. Courts regularly grant stays where "a cursory review of the motion [to dismiss] reveals that defendants have substantial arguments for dismissal of many, if not all, of plaintiff's claims." *Von Drake*, 2004 WL 1144142, at *2; *Ferrari*, 2025 WL 860064, at *4 ("While the Court does not perform a robust examination of the merits of [the defendant's] Motion to Dismiss for [this] purpose … , preliminary review suggests that [the defendant] has presented at least a cogent argument."); *Spadafora*, 2023 WL 11762558, at *1 (granting stay, finding defendant's motion to dismiss "provides substantial arguments for dismissal"); *Sneed v. Abbot*, 2021 WL 2877239, at *4 (M.D. La. Jun. 29, 2021) (staying discovery where motion to dismiss "raises strong arguments … that appear to be a close call"); *MC Asset Recovery, LLC v. Castex Energy, Inc.*, 2007 WL 9718311, at *3 (N.D. Tex. Aug. 6, 2007) (staying discovery after "a cursory review" of filings suggested that "it is certainly possible that Plaintiffs' claims may be dismissed"). And there is no dispute that an order granting Figliuzzi's motion to dismiss would dispose of the

entire case. *Spadafora*, 2023 WL 11762558, at *1 ("[S]taying discovery is appropriate since the disposition of the motion to dismiss might preclude the need for discovery altogether.").

### B. Director Patel's broad and intrusive requests invade protected newsgathering and would risk exposing nonparties to retribution.

In addition to the strength and scope of Figliuzzi's motion, the breadth and burdensomeness of Director Patel's discovery requests support a stay. Even Director Patel admits that his "discovery requests are *so thorough*." (Dkt. 31 at 2) (emphasis added). For example, Director Patel seeks production and disclosure of "all communications … [Figliuzzi] had with anyone from August 1, 2024, to the present regarding [Director Patel]."[2] As to communications with anyone at MSNBC or the FBI, the request is even more burdensome, as Director Patel seeks all communications since January 1, 2020.[3] Director Patel further asks Figliuzzi to identify all "blogs, forums, or other websites" on which he has commented about Patel since August 1, 2024.[4] The burden that such requests would impose on Figliuzzi—an author who has written books, given interviews on hundreds of podcasts and radio shows, appeared on television thousands of times as a national security analyst, and published commentary for MSNBC and other outlets—alone supports stay. *Psychic Readers Network, Inc. v. A&E Television Networks LLC*, 2025 WL 1380956, at *1-2 (S.D.N.Y. May 13, 2025) (staying discovery pending motion to dismiss in defamation case, citing undue burden).

---

[2] Ex. B (Interrogatory No. 3).
[3] *Id.* (Interrogatory No. 5).
[4] *Id.* (Interrogatory No. 3).

Beyond the breadth and burden of these requests, they intrude into years of protected newsgathering by Figliuzzi and others on what is likely a broad range of reports, investigations, and commentary about Patel. Such requests will be subject to objections and claims of privilege under the First Amendment and applicable reporter's shield laws. *See, e.g.*, *Dallas Morning News Co. v. Garcia*, 822 S.W.2d 675, 678-79 (Tex. App.—San Antonio 1991, no writ) (granting mandamus protecting defendant from compelled disclosure of confidential sources in defamation case, where plaintiff had failed to make showing to overcome qualified First Amendment privilege); *Dobrovolskaya v. Monarch Air Group, LLC*, 2025 WL 733258, at *2-9 (S.D.N.Y. Mar. 7, 2025) (granting motion to quash discovery into confidential sources and newsgathering under First Amendment); TEX. CIV. PRAC. & REM. CODE § 22.024; NEV. REV. STAT. ANN. § 49.275; FED. R. EVID. 501 (state law governs privilege). Thus, a stay will avoid unnecessary litigation over these "delicate and complicated issues" and will protect the confidentiality of Figliuzzi's and other journalists' newsgathering while the Court considers dismissal of the entire action. *Lively*, 2025 WL 698287, at *1-2 (concluding that "the complexity of the issues that discovery will present and the sensitivity of the documents that will be requested" supported stay of discovery pending newspaper's motion to dismiss).

The potential harm is not limited to Figliuzzi and other journalists. Following news reports that Director Patel has been using polygraph tests to determine "whether

[employees] have said anything negative" about him,[5] it now appears that he intends to use the discovery process in this case as an additional method of rooting out any critics in the Bureau. For example, he asks Figliuzzi to "[i]dentify any communications you have had with the FBI … regarding Dir. Patel from January 1, 2020."[6] Such a request is particularly disturbing because, for the vast majority of that time, Patel was not FBI Director. Rather, he was a highly controversial political figure and conspiracy theorist who repeatedly attacked the FBI and its leadership. Thus, any communications about him from January 2020 until this year would be about his political positions or him personally—not his performance as FBI Director.

For agents, the consequences of having spoken critically about Director Patel—or even of being suspected of having engaged in such communications—can be career-ending. Patel already has a record of firing or demoting agents he believes might have shared information about his whereabouts and activities, after embarrassing information about him has come to light in the press.[7] This problem will only get worse if discovery proceeds. As discussed below, many of the witnesses in this case will be FBI agents in Washington, D.C., Las Vegas, Nashville, and the various field offices where Director Patel

---

[5] Adam Goldman, *The F.B.I. Is Using Polygraphs to Test Officials' Loyalty*, THE NEW YORK TIMES (Jul. 10, 2025), https://www.nytimes.com/2025/07/10/us/politics/fbi-polygraph-kash-patel.html.

[6] Ex. B (Interrogatory No. 5).

[7] *E.g.*, Ben Penn, *FBI Ousts Leader as Patel Fumes Over Attention to Agency Jet Use*, BLOOMBERG LAW (Nov. 1, 2025), https://news.bloomberglaw.com/us-law-week/fbi-ousts-leader-as-kash-patel-fumes-over-attention-to-agency-jet-use; Carrie Johnson, *Fired FBI agents allege retribution, incompetence at top security agency*, NPR (Sept. 10, 2025), https://www.npr.org/2025/09/10/g-s1-87947/fbi-lawsuit-firing-retribution.

has travelled. These agents should not be forced to worry that providing truthful, complete testimony in this case will expose them to retribution by Patel.

    **C.    A stay will leave ample time for both sides to conduct discovery and will avoid unnecessary motion practice over discovery relevant to Director Patel's daily whereabouts and activities.**

Director Patel will not suffer any prejudice from a temporary stay of discovery while the Court considers Figliuzzi's motion to dismiss. This case is at an early stage, and Director Patel is not seeking any preliminary or expedited relief. The discovery cutoff is not until September 18, 2026, and the case is not scheduled to go to trial until March or April of 2027. (Dkt. 28). Accordingly, Director Patel will have plenty of time to conduct appropriately thorough discovery if his claim survives Figliuzzi's motion to dismiss.

Moreover, a stay would mean that the parties and Court might not ever have to confront the difficult national and personal security issues that Figliuzzi's offensive discovery will entail. To be clear, it is Figliuzzi's position that his "nightclub" remark would not have been understood literally by the reasonable viewer. (Dkt. 25 at 19-24). But if the Court were to reject that argument, Figliuzzi would be entitled to defend himself on the additional grounds that the remark is true. In a defamation case, truth is determined under the First Amendment's "substantial truth" standard, which provides that "[a] statement need not be perfectly true; as long as it is substantially true, it is not false." *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714 (Tex. 2016). A statement is substantially true "if its 'gist' is correct, regardless of whether it 'err[s] in the details.'" *Polk Cnty. Pub. Co. v. Coleman*, 685 S.W.3d 71, 76 (Tex. 2024) (quoting *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 629 (Tex. 2018)). The substantial truth standard also involves

consideration of "whether the alleged defamatory statement was more damaging to [the plaintiff's] reputation, in the mind of the average [viewer], than a truthful statement would have been." *Id.* (citation omitted). Given these standards, defamation defendants are entitled to extremely broad discovery.

Director Patel's own pleadings confirm the breadth of discovery that would be appropriate here. Patel alleges that Figliuzzi's "nightclub" remark is false because he "has not even stepped foot in a nightclub since becoming Director of the FBI." (Dkt. 1 ¶ 23). But Figliuzzi is not obligated to take Patel's spin at face value. He would be entitled to conduct discovery on whether the Director has visited a nightclub *or any substantially similar establishment*. This is not a speculative fishing expedition, as it is already public record that Director Patel is a member of an evening lounge in Las Vegas that shares many purported features of a "nightclub." (Dkt. 30 at 9) (noting that Poodle Room is a "penthouse club open only at night … which describes itself as a 'lounge,' sells alcohol, and has a 'velvet rope' to regulate access"). Director Patel's visits to and activities in the Poodle Room *and any substantially similar establishment* (such as Washington, D.C. social clubs) would be well within the scope of discovery.

That's not all. In responding to Figliuzzi's motion to dismiss, Director Patel argues that the defamatory sting of Figliuzzi's "nightclub" remark is (at least in part) that it associates Patel—a "middle-aged, professional man"—with what he views as sordid activities ("alcohol," "sex," and "partying"). (Dkt. 29 at 11). Such activities, he argues, are "entirely reckless and unacceptable for the Director of the FBI." (*Id.*). According to Director Patel, Figliuzzi's remark is defamatory not only in its *proportionality* (the

inherently improbable notion that Patel is seen in nightclubs "far more" than in the Hoover Building) or even in its suggestion that Patel would *ever* visit a nightclub, but also in what Patel characterizes as its "*subtext of unprofessionalism*." (Dkt. 29 at 11) (emphasis added).

These allegations and arguments put at issue Director Patel's daily and nightly whereabouts and activities. Thus, in discovery Figliuzzi will seek documents such as daily calendars, travel details, flight logs, receipts, credit card bills, reimbursement requests and submissions, relevant communications, telephone call logs, network log-ins to show how often (and from where) he is working remotely, location-tracking information, security detail and SWAT team communications and plans, and other documents that will show where and how Director Patel is spending his workdays and evenings. Of particular relevance will be Director Patel's whereabouts and activities at times when he has publicly blundered or acted unprofessionally.[8] Persons with relevant knowledge on these topics will include those who have been with Patel, especially in the evenings. This includes, but is not limited to, FBI agents assigned to Director Patel's SWAT security detail—including current and recently terminated agents from the FBI's Las Vegas field office. It would also include the security detail of his Nashville-based girlfriend when Patel is with her.[9]

---

[8] *See* Ryan J. Reilly, Michael Kosnar, and David Rohde, *FBI Director Kash Patel criticized for his actions and posts during Charlie Kirk shooting investigation: The FBI leader's decisions to dine at an exclusive restaurant hours after the assassination and to criticize Utah officials raise questions about his leadership, current and former officials say*, NBC News (Sept. 14, 2025), https://www.nbcnews.com/politics/justice-department/kash-patel-criticized-actions-posts-charlie-kirk-shooting-investigatio-rcna231043.

[9] *See, e.g.*, Ken Dilanian and Carol Leonnig, *Kash Patel's girlfriend being protected by FBI SWAT agents as security perk*, MS NOW (Nov. 17, 2025), https://www.ms.now/msnbc/news/kash-patel-girlfriend-fbi-detail-alexis-wilkins-rcna243999.

Such discovery will require the parties and the Court to grapple with serious national and personal security issues. These issues are certain to generate disputes over whether and how such discovery may be conducted so that the FBI's legitimate security concerns are addressed while Figliuzzi is afforded a full and fair opportunity to defend himself. A stay will potentially avoid the need for the Court to delve into these difficult issues, giving it an opportunity to consider Figliuzzi's motion to dismiss—and potentially end the entire case—without any discovery at all.

## CONCLUSION

Defendant Figliuzzi respectfully requests that the Court stay discovery until it resolves his motion to dismiss.

Respectfully submitted,

*/s/ Marc A. Fuller*

| | |
|---|---|
| Marc A. Fuller | Thomas S. Leatherbury |
| Attorney-in-Charge | Texas State Bar No. 12095275 |
| Texas State Bar No. 24032210 | S.D. Tex. Bar No. No. 19358 |
| S.D. Tex. Bar No. 2035080 | tom@tsleatherburylaw.com |
| mfuller@jw.com | Thomas S. Leatherbury Law, PLLC |
| Maggie I. Burreson | Cumberland Hill School Building |
| Texas State Bar No. 24116150 | 1901 N. Akard St. |
| S.D. Tex. Bar No. 3689815 | Dallas, TX 75201 |
| mburreson@jw.com | Phone: (214) 213-5004 |
| Abigail A. Lahvis | |
| Texas State Bar No. 24138136 | Peter B. Steffensen |
| S.D. Tex. Bar No. 3901286 | Texas State Bar No. 24106464 |
| alahvis@jw.com | S.D. Tex. Bar No. 3372006 |
| JACKSON WALKER LLP | psteffensen@smu.edu |
| 2323 Ross Avenue, Suite 600 | SMU Dedman School of Law |
| Dallas, Texas 75201 | First Amendment Clinic |
| Telephone: (214) 953-5793 | P.O. Box 750116 |
| Facsimile:  (214) 953-5822 | Dallas, TX 75275 |
| | Phone: (214) 768-4077 |
| N. Scott Fletcher | |
| Texas State Bar No. 00789046 | |
| S.D. Tex. Bar No. 16546 | |
| Kenneth P. Held | |
| Texas State Bar No. 24030333 | |
| S.D. Tex. Bar No. 29197 | |
| FLETCHER HELD, PLLC | |
| 808 Travis Street, Suite 1553 | |
| Houston, Texas 77002 | |
| Phone : 713.255.0414 | |
| Fax : 713.255.0419 | |
| sfletcher@fletcherheld.com | |

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF CONFERENCE

Counsel for the parties discussed, but were unable to resolve, this dispute during the Rule 26(f) conference on September 2, 2025. Jason Greaves attended on behalf of Plaintiff. Scott Fletcher and Marc Fuller attended on behalf of Defendant.

On November 5-12, 2025, counsel for the parties conferred by email, but were still unable to reach agreement.

*/s/ Marc A. Fuller*
Marc A. Fuller

## CERTIFICATE OF SERVICE

I hereby certify that service of a true and correct copy of the above and foregoing document will be accomplished through the notice of electronic filing in accordance with the Federal Rules of Civil Procedure on this the 21st day of November, 2025, to the following:

Jason C. Greaves, Esq.
Jesse R Binnall, Esq.
BINNALL LAW GROUP
717 King Street, Suite 200
Alexandria, VA  22314
Telephone: (703) 888-1943
Facsimile:  (703) 888-1930
jason@binnall.com
jesse@binnall.com
*Counsel for Plaintiff Kashyap P. Patel*

*/s/ Marc A. Fuller*
Marc A. Fuller